**LAW OFFICES OF CHRISTOPHER G. HOOK**
Christopher G. Hook (State Bar No. 255080)
4264 Overland Avenue
Culver City, California 90230
Phone: (310) 839-5179
E-mail: chris@cghlaw.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN BAKER, LINDA B. OLIVER, <br><br> Plaintiffs, <br><br> vs. <br><br> ALLSTATE INSURANCE COMPANY, EDWARD CARRASCO, and DOES 1 through 10, inclusive, <br><br> Defendants. | CASE NO. 2:19-cv-08024 <br><br> OPPOSITION TO MOTION TO DISMISS AND REMOVAL OF ACTION TO FEDERAL COURT; REQUEST FOR SANCTIONS AGAINST SHEPPARD, MULLING, RICHTER & HAMPTON LLP IN THE AMOUNT OF $50,000 PER FRCP 11 |

Plaintiffs ALAN BAKER and LINDA B. OLIVER respectfully submit the following Opposition to Defendant ALLSTATE INSURANCE COMPANY'S Motion to Dismiss Plaintiffs' Third, Fourth, Fifth, Sixth and Seventh Causes of Action. Plaintiffs oppose Defendants' motion on the grounds that it is factually and legally baseless and filed as an abusive litigation tactic.

Plaintiffs respectfully request:

1) Defendant's Motion be Denied;

2) That this action be remanded to State court as there is no Federal jurisdiction based on "diversity;"

3) Sanction ALLSTATE INSURANCE COMPANY and the law firm SHEPPARD, MULLIN, RICHTER & HAMPTON in the amount of $50,000.00, made payable to

1 the State Bar of California's "Access to Justice" fund, to punish them for their
2 abusive and improper litigation tactics.

## A. CASE OVERVIEW

This is a first-party bad faith action filed on August 13, 2019, in the Superior Court of California, County of Los Angeles. Plaintiffs ALAN BAKER and LINDA OLIVER (collectively the "BAKERS") are the owners of a beautiful historic home located at 344 S. Las Palmas, Los Angeles, in the Hancock Park historic overlay zone. For decades, they maintained a "Deluxe Policy" of homeowners' insurance through Defendant ALLSTATE INSURANCE COMPANY, the company that claims its customers are in "good hands."

On or about September 20, 2018, a plumbing failure occurred on the second floor of the residence while the BAKERS were out of town. A significant portion of the home of severally damaged by the thousands of gallons of water, including century-old oak flooring, original "lathe-and-plater" walls and ceiling, custom molding and cabinetry. As soon as the loss was discovered by the BAKERS, it was reported to ALLSTATE. ALLSTATE initially was helpful with the claim, hiring ServePro to provide immediate water remediation services. Such services were extensive and ultimately cost approximately $65,000 due to the nature and extent of the flooding.

The BAKERS were relocated to a temporary residence in Los Angeles while the remediation and repairs were undertaken, at a cost of $15,000.00 per month, which ALLSTATE has paid.

Anxious to repair their home and move back in, the BAKERS obtained a quote from a very reputable local contractor with decades of experience building and restoring high-end and historical homes, called "Mackey Construction & Restoration." Mackey conducted a thorough inspection and provided an estimate in the amount of $395,000.00 to repair the damage caused by the subject loss. ALLSTATE reviewed the bid by Mackey, and adjuster EDWARD CARRASCO immediately rejected it, and sought to obtain a "competitive" quote from a purported construction company called "Baldwin Construction" based in strip mall San Dimas. While their website is no longer

functioning, Baldwin's website advertises small, low-end commercial projects such as motels that they re-habilitate in San Bernardino. They have no experience whatsoever building or restoring quality, high-end homes. CARRASCO knew this and selected this company knowing they would provide a "low ball" bid he could use to "taking the boxing gloves off" and fight the BAKERS.

Predictably, Baldwin came in with a quote for $144,000.00, more than two hundred thousand dollars lower than Mackey. CARRASCO used this bid to claim that the BAKERS were being unreasonable and refused to authorize any more than the amount estimated by Baldwin. The BAKERS, frustrated and confused about what to do, hired a third-party adjuster company to review the claim. A third construction quote was obtained from a company called "Global" in the amount of $365,000.00, but this was also rejected by CARRASCO and ALLSTATE, with no explanation.

CARRASCO and ALLSTATE, seeing that the BAKERS would not be part of the ninety percent of customers that would not settle quickly, no longer got the "good hands" treatment, but rather that boxing gloves came out. Soon, CARRACO and ALLSTATE began inflicting the classic bad-faith behavior that earned it the ranking of the "Worst Insurance Company in America" by the American Association for Justice – employing the "three Ds": deny, delay and defend. As well documented in recent news reports, ALLSTATE'S incredible profitability has been driven by the "McKinsey" recommendations that they employed to "win on the claims side" by denying their insureds the coverage they had paid for.

Indeed, CARRASCO and ALLSTATE have used every dirty trick in their corporate playbook to deny their insureds the benefit of the policy they had maintained for decades. They would ignore or stall on questions from the BAKERS for months, delaying the construction. As a final and devious tactic, they started to use the twelve-month "alternative living expense" limitation on coverage to threaten the BAKERS. The construction was not finished, the claim not adjusted, yet ALLSTATE and CARRASCO advised the BAKERS they would have to move out of the temporary housing, regardless

of the fact that their home had not been repaired due to ALLSTATE'S delays. ALLTATE and CARRASCO undertook all of this action, knowing that the BAKERS are in their seventies, and that LINDA OLIVER had recently undergone open-hear surgery. ALLSTATE and CARRASCO used the vulnerabilities of the Plaintiffs to their advantage to try and "strong-arm" these elderly individuals into accepting pennies on the dollar, so that ALLSTATE could boost its profits. If there ever was a "textbook" case of first party bad-faith, and tort liability on the part of a claims handler, this would be it.

## B. LEGAL ARGUMENTS

Defendant's Motion to Dismiss, and the removal of this case to Federal court, should be rejected and denied for the following reasons:

**1. Diversity <u>Must</u> Exist at Time of Original Filing and Removal**

After this action was filed, ALLSTATE hired the Sheppard Mullin law firm, who immediately began engaging in bad-faith litigation tactics, such as threating to remove this action to Federal court based on "diversity." The basis for this argument was that no cause of action could be maintained against California resident EDWARD CARRASCO. This was a patently false and disingenuous argument, well known to the attorneys that prepared and filed the notice of removal, as explained below.

Diversity must exist at the time the lawsuit is filed. It need not exist earlier, nor must it continue thereafter. The 'time-of-filing' rule is what it is precisely because the facts determining jurisdiction are subject to change, and because constant litigation in response to that change would be wasteful. (*Grupo Dataflux v. Atlas Global Group, L.P.* (2004) 541 US 567, 571.) At the time this lawsuit was filed on August 13, 2019, <u>there was no complete diversity because citizens of California were both Plaintiffs and a Defendant.</u>

For removal purposes, diversity must exist *both* at the time the action was commenced in state court *and* at the time of removal. (See *United Food & Comm'l Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.* (2nd Cir. 1994) 20 Fed.3d 298, 301; *Ryan ex rel. Ryan v. Schneider Nat'l Carriers, Inc.* (8th Cir. 2001) 263 Fed.3d 816, 819; *Strotek Corp. v. Air Transport Ass'n of America* (9th Cir. 2002) 300 Fed.3d 1129,

1131. Here, there was no diversity at the time the State case filed or at the time of removal. Rather, Defendant ALLSTATE has impermissibly "bootstrapped" removal, by claiming that one of the Defendants <u>must</u> be dismissed, which would <u>then</u> create diversity. Defense counsel knew or should have known this, yet filed for removal out of insolence and greed, for the improper purpose of frustrating Plaintiffs' case.

**2. Tort Claims Against Insurance Agents are Entirely Permissible**

As a basis for their frivolous "diversity" claim, Defendant ALLSTATE argued that "If an agent of an insurer acts in the name of its principal, and the agency is fully disclosed, only the principal, not the agent, can be held liable for the acts of the agent." (Removal Notice, Page 3, Line 15.) This is false and Defendants' counsel knows the argument is false.

When researching their motion, the undersigned turned to The Rutter Group, California Practice Guide: Insurance Litigation, and was surprised to find that one of the authors of this practice guide was attorney Peter H. Klee, lead defense counsel for Defendants ALLSTATE and CARRASCO. Surely Mr. Klee, who "wrote the book" on insurance litigation, would make sure his firm's pleadings were prepared and filed in good faith. However, that would not be the case.

Chapter 12 E of the Insurance Litigation Practice Guide discusses "Who May be Sued for Tortious Breach of Implied Covenant (Proper Defendants)." The undersigned was not surprised to see that the authority confirmed what he knew and pleaded: agents such as EDWARD CARRASCO could be held liable for torts but not on the cause of action for "breach of implied warranty" because there was not contract with them and the insured. Indeed, the authority specifically confirmed that tort actions could be maintained against insurance agents:

> **d. [12:103] Compare—actions available against insurer's officers, employees:**
>
> However, agents and employees may be held personally liable on other theories:
>
> (1) [12:104] Alternative tort theories: The insurer's agents and employees may have committed some independent tort in the course of handling the third-party claims (e.g., misrepresentation or deceit, invasion of privacy, intentional infliction of

emotional distress). In such event, they can be held personally liable even though they are not parties to the insurance contract. [See *Doctors' Co. v. Sup.Ct. (Valencia)*, supra, 49 C3d at 47, 260 CR at 188; *Younan v. Equifax Inc.* (1980) 111 CA3d 498, 511, 169 CR 478, 486; *Bock v. Hansen* (2014) 225 CA4th 215, 228, 170 CR3d 293, 302]

Cross-refer: Alternative tort theories are discussed in detail in Ch. 11.

(a) [12:104.1] Compare—no negligence liability: However, an independent claims adjuster hired by the insurer to investigate a claim against its insured, owes no duty of care to the insured (see ¶ 11:213.20). Therefore, the insured cannot sue the claims adjuster for economic loss resulting from the adjuster's negligent delay in settling a claim (e.g., delay exacerbates injured party's damages, resulting in larger judgment against insured). Such loss may be recoverable, however, from the insurer (see ¶ 12:918 ff.). [*Sanchez v. Lindsey Morden Claims Services, Inc.* (1999) 72 CA4th 249, 255-256, 84 CR2d 799, 803] (2) [12:105]

**Conspiracy with insurer to commit independent tort:** Where the complaint alleges some tort other than breach of the implied covenant against the insurer, the insurer's agents and employees can also be joined as defendants on a conspiracy theory: e.g., that they conspired to cause the insurer to deceive the insured by creating a false excuse to deny a valid third party claim. [*Younan v. Equifax Inc.*, supra, 111 CA3d at 509, 169 CR at 484, fn. 8]

• [12:105.1] Similarly, an action may be maintained against a doctor hired by an insurer for conspiring with the insurer to intentionally inflict severe emotional distress upon the insured by denying his claim for disability benefits. [*Villa v. McFerren* (1995) 35 CA4th 733, 737, 41 CR2d 719, 721; see discussion at ¶ 11:192.5]

• [12:105.2] An action lies against an insurer and its attorney for conspiring to make false statements about coverage in settlement talks with a third-party claimant to induce the claimant to settle for a lesser amount. [*Shafer v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone* (2003) 107 CA4th 54, 84, 131 CR2d 777, 800; see discussion at 11:39.6]

• [12:106] An action has been upheld against agents who conspired with an insurer to "fraudulently terminate benefits." [*Sprague v. Equifax, Inc.* (1985) 166 CA3d 1012, 1029, 213 CR 69, 79; see discussion at ¶ 11:183 ff.]

**Comment:** However, fraud is a separate tort, independent of breach of the implied covenant (see ¶ 11:9, 11:15 ff.). Sprague does not discuss breach of the implied covenant. **Cross-refer:** See discussion of conspiracy at ¶ 11:167 ff.

⇨ **[12:107] PRACTICE POINTER FOR PLAINTIFFS:** Although independent tort actions can be maintained against such agents or employees separately, it is better practice to join them with the "bad faith" action against the insurance company. This may cause the various defendants to blame each other for mishandling the insured's claim, thus proving plaintiff's case. It also opens up discovery into every aspect of the claim, and possibly other related activities from which a pattern of "bad faith" conduct may be inferred. Joining the insurer's agents or employees who reside in the same state as the insured may also prevent an out-of-state insurer from removing the action to federal court on diversity jurisdiction grounds ("local" defendant prevents removal; see 28 USC § 1441(b)).

The Rutter Group, California Practice Guide: Insurance Litigation (August 2019) Hon. H. Walter Cronskey (Ret.), Hon. Rex Heeseman (Ret.), Jeffrey I. Ehrlich, and

**Peter H. Klee,** Chapter Twelve, Section 103.

As the "book" on Insurance Litigation sets forth, not only was it appropriate to bring in EDWARD CARRASCO on the tort claims he committed against the Plaintiffs, but advises it a an advisable course of practice, for both judicial efficiency and may "prevent an out-of-state insurer from removing the action to federal court on diversity jurisdiction grounds." (Id.)

Defense Counsel for ALLSTATE <u>wrote this practice guide and therefore must be charged with the knowledge that he sets forth as "authority."</u> Despite knowing that their was no diversity, and no basis for claiming that no action could be maintained against EDWARD CARRASCO, defense counsel undertook to remove this action to Federal court, and filed a frivolous motion to dismiss, apparently for the sole purpose of delaying the claims handling further, doubling down on their "bad faith" tactics.

**3. ALLSTATE and Sheppard Mullin Richter and Hampton have Violated FRCP 11 and Deserve to be Sanctioned $50,000.00 to the Access to Justice Fund**

FRCP 111 makes every signature on a pleading, written motion or paper a *certification* as to certain essential matters regarding the document signed and authorized sanctions for violation of the certification. The purpose of Rule 11 is to deter dilatory or abusive pretrial tactics and to streamline litigation by excluding baseless filings. (*Cooter & Gell v. Hartmax Corp.* (1990) 496 us 384, 392-393.) The certification is designed to create an affirmative duty of investigation both as to law and as to fact, and thus deter frivolous actions and costly meritless maneuvers. (*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.* (1991) 498 US 533, 543; *Golden Eagle Distributing Corp. v. Burroughs Corp.* (9th Cir. 1986) 801 F.2d 1531, 1536.)

A party filing a patently improper notice of removal may be sanctioned under either Rule 11 or 28 USC § 1447. (*Ballard's Service Ctr., Inc. v. Transue* (1st Cir. 1989) 865 F.2d 447, 449. Rule 11 does not prohibit merely intentional conduct. Inexperience and incompetence may all contribute to a violation. (*Cabell v. Petty* (4th Cir. 1987) 810 F.2d 463, 466.) The pleadings and bad-faith litigation tactic here are clearly purposefully, and


conducted under the leadership and approval of attorneys Peter H. Klee and Marc. J. Feldman, partners with the Sheppard, Mullin, Richter & Hampton law firm. If it was oversight, then the level of incompetence required to allow these pleadings to be filed under their name would still justify the same level of sanctions. There is a higher standard for these attorneys, particularly one who "wrote the book" on insurance litigation. Although the standard is objective, courts consider whether the signer is an attorney or a party in pro se; and also the attorney's degree of experience. (*Huettig & Schromm, Inc. v. Landscape Contractors Council of Northern Calif.* (9th Cir. 1986) 790 F.2d 1421, 1426 – experienced labor lawyer held to higher standard.)

The bad-faith litigation tactics employed by ALLSTATE and Sheppard Mullin in this action are outrageous. They are continuing to abuse, harass and stonewall their insureds, only now through the use of blatantly improper litigation tactics. ALLSTATE only cares about one thing, and that is their bottom line. One possible way to curb further abuse, and to punish counsel for agreeing to participate in such disgraceful conduct is to issue sanctions against them in the amount of fifty thousand dollars ($50,000.00), made payable to the California State Bar's "Access to Justice" fund, so that those without the resources to hire attorneys can do so for important legal cases.

### C. CONCLUSION

For the reasons set forth herein, counsel respectfully requests this Court deny Defendant's motion, and issue sanctions in the amount of $50,000.00 against Defendant ALLSTATE and their insolent counsel.

DATED: November 12, 2019    LAW OFFICES OF CHRISTOPHER G. HOOK

By: /s/ *Christopher G. Hook*
CHRISTOPHER G. HOOK

Attorney for Plaintiffs