SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
PETER H. KLEE, Cal. Bar No. 111707
MARC J. FELDMAN, Cal. Bar No. 144830
JACK F. BURNS, Cal. Bar. No. 290523
501 West Broadway, 19th Floor
San Diego, California 92101-3598
Telephone:  619.338.6500
Facsimile:   619.234.3815
E mail        pklee@sheppardmullin.com
              mfeldman@sheppardmullin.com
              jburns@sheppardmullin.com

Attorneys for Allstate Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN BAKER,<br>LINDA B. OLIVER,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ALLSTATE INSURANCE COMPANY,<br>EDWARD CARRASCO, and DOES 1 through 10, inclusive,<br><br>　　　　　Defendants. | Case No. 2:19-cv-08024-ODW-JC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALLSTATE'S EX PARTE APPLICATION**<br><br>Hon. Otis D. Wright II<br><br>Dept:　First Street Courthouse, Courtroom 5D<br><br>[Complaint Filed: August 13, 2019]<br>Trial Date:　　None set |

## I. INTRODUCTION

Plaintiffs' attorney, Christopher Hook, has embarked on a campaign of abusive and intolerable conduct that began with profanity-laced emails, escalated to discriminatory slurs, and culminated in repeated threats of physical violence against Allstate's witnesses, Allstate's attorneys, and their families.

Therefore, Allstate seeks an ex parte order: (1) dismissing this action, (2) disqualifying Mr. Hook as Plaintiffs' counsel, (3) restraining Mr. Hook from communicating with or approaching Allstate or its attorneys, (4) preventing the depositions noticed by Plaintiffs from proceeding, and (5) awarding sanctions.

Per Local Rule 7-19, Mr. Hook's contact information is:

Christopher G. Hook
Law Offices of Christopher G. Hook
4264 Overland Avenue
Culver City, California 90230
Phone: (310) 839-5179
E-mail: chris@cghlaw.com

## II. MR. HOOK'S ABUSIVE AND THREATENING CONDUCT

This case involves a simple insurance dispute over what it costs to repair water damage to Plaintiffs' house. Based on the estimate of a contractor whom Allstate retained, Allstate paid about $150,000. Based on an estimate that Plaintiffs obtained from a different contractor, they contend that the damages are at least $350,000. (Complaint ¶ 33) Thus, the amount in dispute is about $200,000.

Nevertheless, over the past week, and in the course of sending purported multi-million demands to Allstate, Mr. Hook began sending dozens of abusive and

threatening emails to Allstate's counsel.[1]  It started with vulgar tirades, a small sample of which includes:[2]

- "Fuck you crooks. Eat a bowl of dicks." (Declaration of Peter H. Klee, Ex. 1, p. 5)
- "I'm going to let the long dick of the law fuck Allstate for all of us." (*Id.*, p. 7)
- "Hey Klee you Cumstain the demand is now 302 million.  Pay up fuckface." (*Id.*, p. 8)
- "Peter when you are done felating your copy boy tell Allstate the demand is now 305 million." (*Id.*, p. 9)
- "[Other Sheppard Mullin attorneys] may not be too smart but at least they have some fucking dignity and honor unlike you two limp dick mother fuckers." (*Id.*, p. 10)

Mr. Hook then began hurling discriminatory epithets at Allstate witnesses and Allstate's counsel:

- "What is Wright going to do when he finds out Allstate is using people who are borderline retarded to adjust complex claims. That's what I'm going to do.  Demand increases tomorrow." (Klee Decl., Ex. 1, p. 11)
- "Anytime now faggot." (*Id.*, p. 13)
- "I want my clients' money gay boys." (*Id.*, p. 14)
- "306 million gay boys." (*Id.*, p. 15)

---

[1] Ironically, most of the abuse was directed toward Peter Klee, whom Mr. Hook had never even met or spoken to.  (Klee Decl., ¶ 4)

[2] Allstate regrets being forced to put this language in the record.  But there is no other way to convey the gravity of Mr. Hook's misconduct.

- "Hey shit for brains Allstate owes my clients a lot of money. It's due yesterday.  Pay up fucktard or you will be lucky to work as a notary public in El Cajon."  (*Id*., p. 16)
- "Hey fuck face today only the claim is on sale for 303 million.  If you are too old, impotent and stupid to even discuss settlement, maybe it is time to hand off the file to Paul [S]eeley."  (*Id*., p. 17)

Mr. Hook then escalated his reprehensible conduct and repeatedly threatened physical violence against Allstate's witnesses and attorneys:

- "Tell Allstate I am going to water board each one of their trolls that show up for depo without any mercy whatsoever."  (Klee Decl., Ex. 1, p. 18)
- "Don't make me come down there and beat out of you you fucking thief."  (*Id*., p. 19)
- "You are going to get fucking tattooed across the face Klee."  (*Id*., p. 20)
- "I'm going bat shit crazy on you mother fucking cock suckers."  (*Id*., p. 21)

It would be hard to imagine Mr. Hook's conduct getting any worse.  But it did.  He began to threaten the family of Allstate's counsel:

- "Well karma is a bitch mother fucker. You are going to learn that in spades. I know where you live pete."[3]  (Klee Decl., Ex. 1, p. 22)
- "House in [city where Allstate's counsel lives] . . . Tell [name of counsel's wife] it is going to be sold to pay my clients . . ."  (*Id*., p. 23)

---

[3] These type of threats, coupled with "I know where you live," have been held sufficient to support conviction under California Penal Code Section 422, "Criminal Threats."  *See People v. Trujillo*, No. B259572, 2016 WL 944424, at *15 (Cal. Ct. App. Mar. 14, 2016)

None of Mr. Hook's conduct was triggered by anything that Allstate's counsel did or said. All of his communications with Mr. Hook were polite and professional. (*See* Klee Decl., Ex. 1, pp. 5-6, 11)

As a result of Mr. Hook's threats, Allstate's counsel had no choice but to take the disconcerting step of warning his family members that they may be in danger. Allstate's counsel also alerted security at its offices not to permit Mr. Hook to enter their premises. (Klee Decl., ¶ 4)

Mr. Hook's actions go beyond the pale of anything that should be tolerated anywhere – let alone in a legal proceeding. Depositions are scheduled for the week of December 9, and Mr. Hook cannot be permitted to be in physical proximity with Allstate's witnesses or counsel. (Klee Decl., ¶ 5) Therefore, Allstate has no choice but to seek ex parte relief.[4]

### III. THE COURT SHOULD DISMISS THIS ACTION WITH PREJUDICE

The Court has inherent authority to dismiss this case based on Mr. Hook's alarming misconduct. *Chambers v. NASCO*, 501 U.S. 32, 111 S.Ct. 2123 (1991) (in addition to powers set forth in Federal Rules of Civil Procedure, district court has inherent power to sanction parties who conduct litigation in bad faith, including sanction of dismissal); *Halsco Engineering Co. v. Castle*, 843 F.2d 376, 380 (9th Cir. 1988) ("Dismissal under a court's inherent powers is justified in extreme circumstances in response to abusive litigation practices") (citations omitted).

A dismissal sanction does not require disobedience of a prior court order. *In re Fitzsimmons*, 920 F.2d 1468, 1472 (9th Cir. 1990). Nor must the court warn a party before imposing a dismissal sanction. *Id*.

---

[4] Given the nature of Mr. Hook's threats, Allstate respectfully submits that this is a situation where, under Local Rule 7-19, good cause exists for not including a "statement of opposing counsel's position." Mr. Hook's conduct speaks for itself.

Moreover, a party may not escape dismissal by "arguing that he or she is the innocent party who will be made to suffer from the errors of his or her attorney." *Id*. at 1472 n. 3 (citing numerous cases). "The established principle is that the faults and defaults of the attorney may be imputed to, and their consequences visited upon, his or her client." *West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1523 (9th Cir. 1990) (citation omitted).

That does not mean that Plaintiffs are left without a remedy; they may sue their attorney for malpractice. *See Nealey v. Transportacion Maritima Mexicana*, 662 F.2d 1275, 1282 n.13 (9th Cir.1980).

Short of an actual physical assault – which Mr. Hook has threatened and which Allstate now seeks to prevent before it happens – it is hard to conceive of more egregious conduct than Mr. Hook's. Indeed, courts have dismissed actions for far less. *E.g., Combs v. Rockwell International Corp.*, 927 F.2d 486 (9th Cir. 1991) (affirming dismissal of case under District Court's inherent authority because plaintiff and his attorney made numerous improper changes to his deposition transcript); *Mohammed v. Anderson*, No. 18 C 8393, 2019 WL 3943669, at *5 (N.D. Ill. Aug. 21, 2019) (dismissing action with prejudice based on plaintiffs' series of abusive and vulgar emails – although they did not contain threats of violence).

It is self-evident that there is no going forward with this case after this misconduct. Therefore, the Court should dismiss this action. And it should be dismissed with prejudice because otherwise Mr. Hook could refile the case in another forum and continue his abuse and threats.

### IV. THE COURT SHOULD DISQUALIFY MR. HOOK AS PLAINTIFFS' COUNSEL

If for any reason the Court declines to dismiss the case, the Court should disqualify Mr. Hook from continuing to represent Plaintiffs. Obviously, it is not

tenable for him to continue participating in this case when he has threatened to "waterboard" Allstate's witnesses and to assault Allstate's counsel.

"District judges have an arsenal of sanctions they can impose for unethical behavior. These sanctions include monetary sanctions, contempt, and the disqualification of counsel." *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996).

> Whenever an allegation is made that an attorney has violated his moral
> and ethical responsibility, an important question of professional ethics
> is raised. It is the duty of the district court to examine the charge, since
> it is that court which is authorized to supervise the conduct of the
> members of its bar. The courts, as well as the bar, have a responsibility
> to maintain public confidence in the legal profession. This means that a
> court may disqualify an attorney for not only acting improperly but also
> for failing to avoid the appearance of impropriety.

*Gas–A–Tron of Ariz. v. Union Oil Co.*, 534 F.2d 1322 (9th Cir.), *cert. denied sub nom. Shell Oil Co. v. Gas–A–Tron of Ariz.*, 429 U.S. 861, 97 S.Ct. 164 (1976).

Mr. Hook's conduct has gone well beyond the "unethical" and "improper." It is shocking and even terrifying. He cannot continue to be an attorney in this case. The Court should disqualify him.

## V.     THE COURT SHOULD ISSUE A RESTRAINING ORDER

The Court should also issue a restraining order prohibiting Mr. Hook from having any communication with Allstate and its counsel, and from approaching their homes and places of business. Fed. R. Civ. Proc. 65(b).

Mr. Hook's threats to "waterboard" witnesses, "beat" Allstate's counsel, and "tattoo [them] across the face" are alarming enough. But Mr. Hook coupled these with warnings that "I know where you live," – which he demonstrated that he does –

and even mentioned counsel's wife by name.  Thus, Mr. Hook has shown himself to be an imminent danger.

The Court should issue a temporary restraining order prohibiting Mr. Hook from (1) having any further communication, orally or in writing, with Allstate or its counsel; and (2) approaching within 100 feet of the offices or homes of Allstate personnel and its counsel.  The Court should also set a hearing to have the restraining order become an injunction.  Fed. R. Civ. Proc. 65(b).

## VI. THE COURT SHOULD ISSUE A PROTECTIVE ORDER PREVENTING DEPOSITIONS FROM PROCEEDING

In the event that the Court does not rule on the other aspects of this application before December 9, the week during which depositions of Allstate are set, at a minimum the Court should issue a protective order prohibiting these depositions from proceeding.  It goes without saying that Allstate's witnesses and attorneys cannot be present with Mr. Hook after he has repeatedly threatened them with assault, including to "water board," "beat," and "tattoo" them across the face.

## VII. THE COURT SHOULD AWARD SANCTIONS

Finally, no litigant, including Allstate, should be forced to bear the expense of seeking protection from an attorney's abuse and threats.  The Court has inherent authority to impose monetary sanctions. *Erickson*, 87 F.3d at 303.  Allstate has incurred more than $6370 in attorneys' fees in bringing this ex parte application (not including the time reviewing and evaluating Mr. Hook's barrage of emails), and requests that the Court order Mr. Hook to pay this amount to Allstate in sanctions.

**VIII. CONCLUSION**

In a collective 75 years of legal practice, Allstate's counsel have never seen behavior that even comes close to that of Mr. Hook here. It is unlikely that the Court has either. Allstate requests that the Court grant ex parte relief.

Dated: November 26, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By    *s/ Marc J. Feldman*
       MARC J. FELDMAN

Attorneys for Allstate Insurance Company