1  **LAW OFFICES OF CHRISTOPHER G. HOOK**
   Christopher G. Hook (State Bar No. 255080)
2  4264 Overland Avenue
   Culver City, California 90230
3  Phone: (310) 839-5179
   E-mail: chris@cghlaw.com
4

5  Attorney for Plaintiffs

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| ALAN BAKER, *et seq.*<br><br>    Plaintiffs,<br><br>    vs.<br><br>ALLSTATE INSURANCE COMPANY, *et seq.*<br><br>    Defendants. | CASE NO. 2:19-cv-08024<br><br>PLAINTIFFS' OPPOSITION TO DEFENDANT ALLSTATE INSURANCE COMPANY'S *EX PARTE APPLICATION* FOR DISMISSAL AND DISQUALIFICATION; MEMORANDUM IN SUPPORT<br><br>Hon. Otis D. Wright II<br><br>Date:  December 16, 2019<br>Time:  1:30 p.m.<br>Dept:  First Street Courthouse<br>       Courtroom 5D |

21     Plaintiffs ALAN BAKER and LINDA B. OLIVER hereby oppose and object
22 to the meritless and untimely *ex parte* application for dismissal and disqualification
23 filed by Defendant ALLSTATE INSURANCE COMPANY. Plaintiffs respectfully
24 request the Court consider the arguments and evidence submitted herewith, deny
25 ALLSTATE'S application, reverse the order setting an OSC and placing a hold on
26 depositions, and award monetary sanctions against ALLSTATE for continued bad-
27 faith litigation tactics.
28 / / /

The *ex parte* application by Defendant is a desperate and improper attempt at gamesmanship, filed without any attempt at informal resolution on the eve of a stormy Thanksgiving holiday. Defendant's papers were prepared and filed without regard for, and in violation of, applicable law local rules, for the improper purposes of delaying depositions and frustrating the administration of justice.

Defense counsel's sole "evidence" in support of their application is a hearsay reference alleging the undersigned told defense counsel "I know where you live" during settlement discussions. Plaintiffs submit this is not good cause for a motion, let alone *ex parte* relief intended to be availed by litigants facing extraordinary circumstances. Settlement discussions and all litigation related speech are "absolutely privileged" under California Civil Code section 47(b) and inadmissible as evidence under California Evidence Code section 1152 – they cannot be used for any substantive purpose against Plaintiffs.

Plaintiffs respectfully request the Court reverse its order staying depositions and setting an "Order to Show Cause" on Defendant's application on December 16, 2019, and instead allow Plaintiffs to proceed with scheduled depositions and discovery. Plaintiffs respectfully request the Court issue monetary sanctions against ALLSTATE and their counsel, or such other and further relief as the Court considers proper, up to and including striking their pleadings pursuant to FRCP 11.

## I. CASE OVERVIEW

This is a first-party bad faith insurance case filed in the Superior Court of California, County of Los Angeles on August 13, 2019. The complaint was filed on behalf of two elderly homeowners who reside in Hancock Park and suffered a massive water loss on September 20, 2018 which destroyed nearly half their home. Unfortunately, their misfortune turned into a nightmare when their "good hands" insurer assigned their claim to an adjuster who did not understand the benefits plaintiffs purchased as part of their "Deluxe Homeowners Policy." Instead of co-operating with the insured to make available up to $1.7 million dollars in extended

replacement coverage to reasonably repair the damage, ALLSTATE'S adjuster EDWARD CARRASCO attempted to bludgeon these elderly customers into accepting pennies on the dollar of what they were owed.

Prior to filing this lawsuit, the undersigned wrote EDWARD CARRASCO to try and resolve this matter. Attached to the supporting Declaration of Christopher G. Hook as Exhibit "A" is a copy of the initial demand letter. (Declaration of Christopher G. Hook, Paragraph 8.) No response of any kind was received by CARRASCO. (Hook Dec. ¶ 8.)

The complaint filed in State court on August 13, 2019 (Hook Dec. ¶ 8.) includes seven causes of action, including tort claims against ALLSTATE INSURANCE COMPANY and local ALLSTATE adjuster EDWARD CARRASCO. On or about September 17, 2019, the law firm SHEPPARD, MULLIN, RICHTER & HAMPTON ("SMRH") filed papers noticing removal of the action to federal court, claiming "diversity jurisdiction."

Their flawed argument for diversity: "If an agent of an insurer acts in the name of its principal, and the agency if fully disclosed, only the principal, not the agent, can be held liable for the acts of the agent. *Khordadian v. New York Life Ins. Co.*, 2014 WL 12705059, at *3 (C.D. Cal. June 10, 2014) … Plaintiffs admit that Mr. Carrasco was a fully disclosed agent acting in the course and scope of his employment with Allstate. For this reason, Plaintiff cannot state any valid claim against Mr. Carrasco." (ALLSTATE'S Notice of Removal; Page 3, line 15 to Page 4, line 13.)

On September 24, 2019, ALLSTATE filed a Motion to Dismiss Plaintiffs' Third, Fourth, Fifth, Sixth and Seventh causes of action against defendant adjuster EDWARD CARRASCO. (Hook Dec.; ¶ 10 & 11.) On November 12, 2019, Plaintiffs filed an Opposition to the Motion to Dismiss and Removal papers filed by SMRH, because there was no diversity jurisdiction and the removal was simply a continuation of ALLSTATE'S bad-faith tactics.

///

On November 13, 2019, Plaintiffs' counsel Christopher G. Hook ("Hook") deposed Robert Romero, identified as the supervisor of EDWARD CARRASCO. (Hook Dec., ¶ 13.) The deposition was concluded at approximately four thirty (4:37 p.m.) at the request of Mr. Romero (who was tired) and defense counsel Marc Feldman, with the promise to make him available again in sixty days. At no time did Mr. Feldman express to the undersigned an opinion that Hook was behaving inappropriately towards counsel or the witness. A true and complete copy of the transcript from the first session of the deposition of Robert Romero is attached to the Declaration of Christopher G. Hook as Exhibit "D" evidencing same.

Defendant CARRASCO'S deposition was taken on November 15, 2019. The deponent was represented by Mr. Feldman. The deposition proceeded without incident until the mid-afternoon when the witness grew tired after less than four hours of testimony and requested a continuance. Plaintiffs' counsel agreed to continue the deposition to a mutually convenient date. At no time during the deposition did Mr. Feldman indicate that the undersigned was threatening the witness or making him uncomfortable.

A true and complete copy of the transcript from the first session of the deposition of EDWARD CARRASCO is attached to the Declaration of Christopher G. Hook as Exhibit "E."

During CARRASCO'S deposition, a policy limits settlement demand was extended to ALLSTATE. This demand was left open until the day after the deposition. As set forth in further detail in the supporting declaration of Christopher G. Hook, following CARRASCO'S deposition it was the opinion of counsel that clear and convincing evidence existing giving rise to a high probability claim of punitive damages against ALLSTATE insurance. After such date, Plaintiffs' counsel began aggressively negotiating a settlement with defense counsel.

///
///

Unfortunately, defense counsel decided to ignore Mr. Hook, refusing to take his calls or respond to his voice and electronic mails in a disrespectful manner violating rules of professional conduct and civility. (Hook Dec. ¶ 21 & 22.)

The unfortunate byproduct of this "stonewalling" were the alleged angry and inappropriate words directed at Mr. Klee in conjunction with trying to resolve this case, which are nonetheless privileged under Civil Code section 47(b). Coarse or offensive language used privately between counsel during litigation and settlement discussions, are no basis for placing a "hold" on depositions, dismissing this action, or disqualifying the Plaintiffs' counsel of choice. On the contrary, ALLSTATE'S *ex parte* application (with a supporting declaration from Mr. Klee admitting no effort to meet and confer, and admitting he has "never spoken" to the undersigned) is another example of bad faith litigation tactics in violation of FRCP 11.

## II. LEGAL ARGUMENTS AND AUTHORITY

*Ex parte* motions are disfavored because the nonmoving party has limited opportunity to oppose the motion, and there is always the concern that the movant may not be presenting all the facts the court needs to know before making a ruling and that its ruling, therefore, may be incorrect or unfair to the nonmoving party. (See *In re Intermagnetics America, Inc.* (CD CA 1989) 101 BR 191, 192-193; *In re High Sulfur Content Gasoline Products Liability Litig.* (5th Cir. 2008) F.3d 220, 231.)

Defendant ALLSTATE'S *ex parte* application is procedurally defective and improper and should be summarily denied. The motion is factually baseless and is a "bad-faith" litigation tactic designed to improperly delay this case to Plaintiffs' prejudice and should be stricken pursuant to FRCP 11.

### A. Defendant ALLSTATE Failed to Meet and Confer Prior to Filing

The Local Civil Rules for the United State District Court, Central District of California, require in relevant part:

> **L.R. 7-3 Conference of Counsel Prior to Filing of Motions.** In all cases not listed as exempt in L.R. 16-12, and except in connection with

discovery motions (which are governed by L.R. 37-1 through 37-4) and applications for temporary restraining orders or preliminary injunctions, counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution. The conference shall take place at least seven (7) days prior to the filing of the motion. If the parties are unable to reach a resolution which eliminates the necessity for a hearing, counsel for the moving party shall including in the notice of motion a statement to the following effect: "This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on (date)."

ALLSTATE filed no declaration describing a conference or attempt at informal resolution in support of its *ex parte* application. The reason being: at no time has defense counsel picked up the phone to try and work out a solution, in fact no "meet and confer" effort of any kind was undertaken by Mr. Klee or SMRH. (Hook Dec. ¶ 25.) Instead, Plaintiffs' counsel was blindsided by defendant's *ex parte* application on the eve of Thanksgiving. (Hook Dec. ¶ 26.)

Plaintiffs note Defendant's *ex parte* application violates a number of Judge Wright's Department Rules, including:

A) The "meet and confer" requirement set forth in Section VII, Subsection A (2);

B) The specification in Section VII, Subsection B (4) that *ex parte* applications are "solely for extraordinary relief and should be used with discretion… Counsel's attention is directed to the Local Rules. Applications that fail to conform to Local Rule 7-19 and 7-19.1, including a statement of opposing counsel's position, will not be considered except on a specific showing of good cause;"

C) That professional courtesy dictates moving parties should, whenever possible, avoid filing motions for which opposition papers will be due the Friday preceding a holiday. (Section VII Subsection A (1).)

In contravention of these guidelines, SMRH served their *ex parte* application

-6-
OPPOSITION TO *EX PARTE* APPLICATION FOR DISMISSAL AND DISQUALIFICATION

at noon on Tuesday, November 26th, and advised the undersigned that his papers would be due twenty-four hours later, on November 27th, 2019, the day before Thanksgiving.

### B. No Supporting Evidence of "Good Cause" for Relief

An *ex parte* application must show why the moving party should be allowed to "go to the head of the line in front of all other litigants and receive special treatment." (*Mission Power Engineering Co. v. Continental Cas. Co.* (C.D. CA 1995) 883 F.Supp. 488, 492.)

First, the moving party must show that his or her cause will be *irreparably prejudiced* if the underlying motion is heard according to regular noticed procedures. Second, it must be established that the moving party is *without fault* in creating the crisis or that the crisis occurred as a result of *excusable* neglect: "Ex parte applications are not intended to save the day for the parties who have failed to present requests when they should have … " (*Mission Power Engineering Co. v. Continental Cas. Co., supra,* 883 F.Supp. at 492; see also *In re Intermagnetics America, Inc.* (C.D. CA 1989)

Here, there is no "good cause" for the relief sought, because the use of foul language during settlement, on its face, is not an extraordinary circumstance that requires court intervention. Secondly, it appears that defense counsel caused or contributed to the alleged situation by refusing to communicate with Plaintiffs' counsel without explanation.

Even if the use of offensive language during settlement and litigation discussions were not privileged, defendant's motion fails because it is not supported by sufficient evidence. Motions must be supported by evidence that meets all the requirements for admissibility of evidence if offered at the time of trial. (*Travelers Cas. & Sur. Co. of America v. Telstar Const. Co., Inc.* (D AZ 2003) 252 F.Supp.2d 917, 922; see also CD CA Rule 7-7, ND CA Rule 7-5(b).)

Plaintiffs object to the Declaration of Peter Klee as insufficient as a matter of law pursuant to FRCP 56(c)(4), and the statement therein attributed to Mr. Hook as

1  inadmissible hearsay. Furthermore, the myriad settlement e-mails, purportedly from
2  the undersigned, submitted with the defendant's application were not properly
3  authenticated, and Plaintiffs object to the admission or consideration of each and
4  every document not properly authenticated that was filed in support of the subject
5  application. (See *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.* (9th Cir. 1990)
6  896 F.2d 1542, 1550-1551 – attorney's summary of a registration statement
7  insufficient authentication; *Beyene v. Coleman Security Services, Inc.* (9th Cir. 1988)
8  854 F.2d 1179, 1182 – "A writing is not authenticated simply by attaching it to an
9  affidavit …")

### C. California State Law Controls Privilege Issues

In federal court civil actions as to which *state law* supplies the rule of decision on a claim or defense (i.e., diversity cases), privilege issues must be determined in accordance with state law ("*Erie* doctrine"). (FRE 501; *In re Ford Motor Co.* (3rd Cir. 1997) 110 F.3d 954, 965; *In re Avantel, S.A.* (5th Cir. 2003) 343 F.3d 311, 318, fn. 6; *In re Powerhouse Licensing, LLC* (6th Cir. 2006) 441 F.3d 467, 472.)

Preliminary questions concerning the existence of a privilege are determined by the trial court under Rule 104(a). (FRE 104(a); *United States v. Zolin* (1989) 491 U.S. 554, 568.)

### D. Counsel's Alleged Statements are Privileged Per Civil Code § 47(b)

Even had defendant proffered evidence to prove that alleged offensive statements were made by counsel during settlement communications, such statements were likely "puffery" or "trash talk" that was absolutely privileged under California Civil Code section 47(b). This statute provides an absolute privilege for statements made in connection with any judicial proceeding that further the objects of the litigation. (See *Silberg v. Anderson* (1990) 50 Cal.3d 205, 219-220, 266 Cal.Rp. 638, 647; *Suarez v. Trigg Laboratories, Inc.* (2016) 3 Cal.App.5th 118, 123-123, 207 Cal.Rp.3d 411, 416 – protection applies even against allegations of nondisclosure or fraudulent statements made during settlement process.)

1  Settlement discussions are protected by Civil Code section 47(b) *and*
2  California's Anti-SLAPP statute, even those communications conducted in bad faith.
3  (C.C.P. § 425.16; *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 963; 106 Cal.Rp.3d
4  290, 297-298.) The privileges conferred by Section 47 are absolute and apply
5  regardless of whether the communication was made with malice or the intent to harm.
6  (*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (App. 4 Dist.
7  2006) 137 Cal.App.4th 1118.)

8  Civil Code section 47(b) and Evidence Code section 1152 track federal law,
9  specifically Rule of Evidence 408, which protects matters disclosed in settlement
10 discussions from use as evidence. This has been recognized in at least one federal
11 court as a "settlement privilege" to protect statements made during settlement
12 negotiations from discovery. (*Goodyear Tire & Rubber Co. v. Chiles Power Supply,*
13 *Inc.* (6th Cir. 2003) 332 F.3d 976, 980.)

### III. CONCLUSION

15 As set forth in this opposition, the supporting declaration of the undersigned
16 and exhibits submitted therewith, Plaintiffs respectfully request the Court deny
17 defendant's *ex parte* application.

18 Furthermore, Plaintiffs request the Court reverse its prior order setting an
19 "Order to Show Cause" hearing on December 16, 2019, and placing a hold on
20 depositions, so that Plaintiffs' noticed continued deposition on December 10, 2019,
21 can continue as planned.

23 DATED: December 3, 2019        LAW OFFICES OF CHRISTOPHER G. HOOK

By: _____
CHRISTOPHER G. HOOK

Attorney for Plaintiffs

-9-
OPPOSITION TO *EX PARTE* APPLICATION FOR DISMISSAL AND DISQUALIFICATION