1 | **LAW OFFICES OF CHRISTOPHER G. HOOK**
Christopher G. Hook (State Bar No. 255080)
2 | 4264 Overland Avenue
Culver City, California 90230
3 | Phone: (310) 839-5179
E-mail: chris@cghlaw.com
4 |

5 | Attorney for Plaintiffs

6 |

7 |

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA**

10 |

11 | ALAN BAKER, *et seq.* | CASE NO. 2:19-cv-08024

12 | Plaintiffs, | DECLARATION OF CHRISTOPHER G. HOOK IN SUPPORT OF

13 | vs. | OPPOSITION TO DEFENDANT'S *EX PARTE* APPLICATION

14 | ALLSTATE INSURANCE COMPANY, *et seq.* | Hon. Otis D. Wright II

15 | | 

16 | Defendants. | Date: December 16, 2019
Time: 1:30 p.m.
Dept: First Street Courthouse

17 | | Courtroom 5D

18 |

19 | I, Christopher George Hook, declare:

20 | 1. I am the attorney of record for Plaintiffs in the above-entitled action. I

21 | make the following declaration based upon my own personal knowledge, except for

22 | matters specifically stated on information and belief, and as to those matters I

23 | believe them to be true. If called to testify in this matter, I could and would testify to

24 | the facts set forth herein.

25 | 2. I am an attorney admitted to the State Bar of California with twelve years

26 | of experience practicing law. I have no record of discipline with the State bar. I have

27 | owned and operated my own law practice in Culver City since in or about 2013.

28 | / / /

3. I have extensive experience working professionally with the Sheppard, Mullin, Richter & Hampton law firm ("SMRH"). Since late 2013, I have represented INVESTMENT COMPANY OF SANTA MONICA, PACIFIC SYSTEMS, and THOMPSON INDUSTRIAL PROPERTIES in more than twelve cases and related appeals pending in the Superior Court of California, County of Los Angeles, where the opposing parties PAMELA WELLS, SHEILA WELLS and GARDEN GATE INC. are represented by SMRH. These cases continue to this day. I have worked with SMRH attorneys from their Los Angeles office for six years without incident, including taking and defending dozens of depositions at SRMH's office in downtown Los Angeles. These cases are now in settlement discussions after five years of heavy litigation.

4. I am submitting this declaration in opposition to Defendant ALLSTATE INSURANCE COMPANY'S ("ALLSTATE") *ex parte* application to have this action dismissed and the undersigned disqualified, on the allegation the undersigned directed abusive and offensive language at defense counsel in conjunction with settlement discussions. Defendant's application is meritless, and filed for the improper purpose of delaying this litigation in general, and depositions of ALLSTATE witnesses set for December 10th and 17th in particular.

5. Plaintiffs object to defendant's application on the basis that there is no good cause for their request. I have a right to free speech under the United States Constitution. Under California law, speech and communication made in conjunction with litigation enjoys an "absolute privilege" under California Civil Code section 47(b). Furthermore, there is broad statutory protection for speech made in conjunction with settlement negotiations (See *to wit* Cal. Ev. Cod. § 1152 and Federal Rules of Evidence Rule 408). Even if the allegations in defendant's application were supported by evidence (they are not), such inflammatory speech would be absolutely privileged. To hold otherwise would result in a litigation environment spawning an endless spin-off of "sub" lawsuits when the pride of

DEC. OF CHRIS HOOK IN SUPPORT OF OPPOSITION TO *EX PARTE* APPLICATION

1   counsel was injured.

2       6. I was retained in July of 2019 by ALAN BAKER and LINDA B. OLIVER

3   (collectively referred to as "Plaintiffs" or the "BAKERS"), to address a critical

4   situation with ALLSTATE INSURANCE COMPANY arising from a massive water

5   loss that occurred on or about September 20, 2018 at their residence located at 344

6   S. Las Palmas Avenue in Los Angeles, California. The subject loss is further

7   described in Plaintiffs' complaint, which is incorporated by reference as though

8   fully set forth herein.

9       7. The BAKERS were at their "wits end" in July of 2019, because they had

10   been displaced from their home as a result of the loss, and the repairs were not

11   complete ten months after the loss. ALLSTATE had refused to pay their contractor

12   his estimate for the damage, forcing the BAKERS to cut corners and pay out-of-

13   pocket for much of the repairs to the Las Palmas residence. To make matters worse,

14   ALLSTATE was threatening the BAKERS with ending payments for their

15   temporary housing (in an amount exceeding fifteen thousand dollars $15,000.00 per

16   month) despite the fact their home was finished as a result of ALLSTATE'S

17   sandbagging.

18       8. The undersigned initially attempted to resolve this matter directly with

19   ALLSTATE adjuster EDWARD CARRASCO. Attached as Exhibit "A" is a true

20   and correct copy of a "Notice of Representation" explaining the potential claim and

21   seeking a prompt resolution, sent on or about August 7, 2019. I never received a

22   response from CARRASCO or ALLSTATE. The undersigned filed a lawsuit on

23   August 13, 2019 in the Superior Court of California, County of Los Angeles,

24   Central District.

25       9. In early September of 2019, I was contacted by attorney Jack Burns of

26   SMRH who advised me by e-mail that they intended to remove the matter to Federal

27   court on the basis of diversity jurisdiction. I was annoyed by this tactical move,

28   because I had noticed depositions of EDWARD CARRASCO and his supervisor

DEC. OF CHRIS HOOK IN SUPPORT OF OPPOSITION TO *EX PARTE* APPLICATION

Robert Romero for early October of 2019. I told Mr. Burns that I disagreed with removal as there was no diversity. Defense counsel disagreed and filed removal papers on or about September 17, 2019.

10. On or about September 24, 2019, SMRH filed a "Motion to Dismiss" the third, fourth, fifth, sixth and seventh causes of action from Plaintiffs' complaint, which were the tort claims asserted against EDWARD CARRASCO. Prior to this motion being filed, I explained to counsel I considered such a move frivolous, as there was blackletter authority for asserting tort claims against an insurance adjuster.

11. On or about September 24, 2019, I sent defense counsel a letter regarding our Rule 26 meeting and further handling, including depositions. Attached as Exhibit "B" is a true and correct copy of the letter I drafted and sent to SMRH dated September 24, 2019.

12. On or about October 30, 2019, I sent defense counsel a letter to "meet and confer" about deposition dates and offering to accommodate their schedule which set the depositions for date after that the undersigned desired. Attached as Exhibit "C" is a true and correct copy of my letter to SMRH dated October 30, 2019.

13. On November 13, 2019, I took the deposition of ALLSTATE supervisor Robert Romero. Attached as Exhibit "D" is a true and correct copy of the transcript and exhibits from the deposition of Mr. Romero on November 13, 2019.

14. On November 15, 2019, I took the deposition of ALLSTATE adjuster EDWARD CARRASCO. Attached as Exhibit "E" is a true and correct copy of the transcript and exhibits from the deposition of Mr. CARRASCO on November 15, 2019. During the deposition proceedings and on the record, I made a "policy limits" settlement demand.

15. I considered the depositions of Mr. Romero and Mr. CARRASCO damaging for ALLSTATE because both witnesses provided sworn testimony that was clear and convincing evidence of a conscious disregard for the rights of the Plaintiffs. The fact that both witnesses "tapped out" by claiming they were "tired"

DEC. OF CHRIS HOOK IN SUPPORT OF OPPOSITION TO *EX PARTE* APPLICATION

after less than four hours of questioning indicated this case was ripe for settlement. I immediately requested dates for the continued depositions of Mr. Romero and Mr. CARRASCO, and again made a policy limits demand in an e-mail dated November 15, 2019. A true and correct copy of my e-mail dated November 15, 2019 is attached hereto as Exhibit "F."

16. During the deposition of Mr. CARRASCO, I asked Mr. Feldman why ALLSTATE was subjecting their employee to cross-examination when he clearly had no training, qualifications, experience or supervision in claims adjusting. Mr. Feldman and I exchanged some banter about the case, and the undersigned recalls Mr. Feldman telling him that "[SMRH] litigates hard but also works hard to settle cases when appropriate" or words to that effect. I took this to mean that defense counsel wished to try and resolve this claim.

17. After thinking more about the depositions of the past week, on November 16th and November 17th the undersigned re-evaluated the worth of his clients' claim based on what he considered clear and convincing evidence that exposed ALLSTATE to a very high chance of exposure to a punitive damage award. I quickly withdrew my policy limits demand, and began making quiet, simple demands for settlement in an amount that I believed reflected the current value of the case. I have made dozens upon dozens of calls, e-mails and letters to SMRH attorneys Burns, Feldman, and Klee, and have not received the courtesy of but a single obtuse e-mail from Mr. Feldman, stating they considered this case to be worth between $0.00 and $200,000.00. I have never spoken to Mr. Klee, despite calling him numerous times for the purpose of politely discussing the case.

18. On November 19, 2019, I sent a settlement demand to ALLSTATE. The demand was professional and contained no course language or threats. A true and correct copy of this demand is attached as Exhibit "G." I never received any response whatsoever to this correspondence from defense counsel.

/ / /

DEC. OF CHRIS HOOK IN SUPPORT OF OPPOSITION TO *EX PARTE* APPLICATION

19. On November 20, 2019, I sent a settlement demand to ALLSTATE. The demand was professional and contained no course language or threats. A true and correct copy of this demand is attached as Exhibit "H." I never received any response whatsoever to this correspondence from defense counsel.

20. On November 21, 2019, I sent a settlement demand to ALLSTATE. The demand outlined my theory of the case and why I considered it in ALLSTATE and my clients' best interest to settle quickly. A true and correct copy of this demand is attached as Exhibit "I." It should be noted the undersigned redacted certain portions of this letter that are confidential or private, and irrelevant to the matter before the Court. I never received any response to this correspondence.

21. After approximately one-week of being "stonewalled" by defense counsel, who would not take my calls, return my calls, or respond to my e-mails, the undersigned considered that SMRH was employing a tricky tactic to deny the undersigned any information in the case, even if that meant violating the rules of professional conduct, *to wit:*

A) Violating Cal. Rule of Professional Conduct Rule 3.1, by persisting in advocating meritless claims and contentions;

B) Violating Cal. Rule of Professional Conduct Rule 3.2, by employing litigation tactics that have "no substantial purpose other than to delay or prolong the proceeding or to cause needless expense;

C) Violating Cal. Rule of Professional Conduct Rule 8.4(d), by engaging in conduct that is prejudicial to the administration of justice.

22. The guidelines adopted by the Los Angeles County Bar Association are the standard for professional conduct in civil litigation, as set forth in Rule 3.26 of the Los Angeles County Superior Court Local Rules, and incorporated by reference to Chapter Three as Appendix 3.A (available at www.lacourt.org/courtrules/). SMRH has disregarded numerous civility guidelines in their "slash and burn" defense of ALLSTATE, including:

A) Filing *ex parte* papers on the eve of Thanksgiving, in violation of the guideline that "the timing and manner of service of papers should not be used to the disadvantage of the party receiving the papers."

B) Failing to engage in any sort of discussion with the undersigned to resolve the issue of offensive language prior to filing their *ex parte* application, in violation of subsection (h) of Appendix 3.A.

C) Refusing to engage in any meaningful settlement discussion, despite guideline (k) providing under subsection (1) "Except where there are strong and overriding issues of principle, an attorney should raise and explore the issue of settlement in every case as soon as enough is known about the case to make settlement discussions meaningful." (Id.)

23. The undersigned sought to employ a confidential negotiating tactic by employing harsh language and provocative insults against counsel for ALLSTATE, out of an interest in trying to resolve this case only. The undersigned recognizes that perhaps some of the language "crossed the line" of civility and was offensive and inappropriate. With that said, the language used was "for effect," similar to bluster or "puffery" and was not intended to actually be considered personal insults. At no time did the undersigned threaten or intend to threaten defense counsel, their co-workers or families with harm. The undersigned apologized to defense counsel and the Court and represents and warrants that such language will not be used by the undersigned again in this matter. The undersigned's clients had absolutely no idea about or input in the language allegedly used by the undersigned. It would be extremely unfair and prejudicial to hold them to account in any way for the indiscretions of their counsel, who may have used some inappropriate language out of frustration and anger.

/ / /

/ / /

/ / /

DEC. OF CHRIS HOOK IN SUPPORT OF OPPOSITION TO *EX PARTE* APPLICATION

24. As evidenced by the deposition transcripts submitted herewith as Exhibits "D" and "E," at no time did the undersigned threaten the witnesses or make them uncomfortable. At no time did Mr. Feldman suspend the deposition to seek a protective order; in fact on each occasion he agreed to make the witnesses available to finish their depositions within sixty days. The undersigned noticed, and defense counsel confirmed EDWARD CARRASCO'S continued deposition for December 10, 2019. The undersigned suspects on information and belief that ALLSTATE'S *ex parte* application was simply a gambit to delay the completion of a deposition devastating to their potential risk in this case.

25. At no time prior to November 26, 2019 (or after), did attorneys Jack Burns, Marc Feldman or Peter Klee attempt to "meet and confer" with me regarding the subject matter of their *ex parte* application. Had they called me back to discuss the subject, or sent on e-mail on same, their application would have been unnecessary.

26. The undersigned was "blindsided" with defendant's *ex parte* application when he received electronic service of same on or about noon on November 26th, 2019 two days before Thanksgiving. At the time of filing, the undersigned was en route to San Luis Obispo county with his family for a Thanksgiving holiday trip. The undersigned had no time to digest, review and respond to the papers until they were completed on today's date, and for that the undersigned respectfully apologizes to the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed within the United States, in Culver City, California, on December 3, 2019.

_____
CHRISTOPHER G. HOOK

DEC. OF CHRIS HOOK IN SUPPORT OF OPPOSITION TO *EX PARTE* APPLICATION