EXHIBIT "A"

## LAW OFFICES OF CHRISTOPHER G. HOOK
4264 Overland Avenue
Culver City, CA 90230
(310) 839-5179

August 7, 2019

Edward Carrasco
*ecar4@allstate.com*
Allstate Insurance Company
P.O. Box 6525
Diamond Bar, CA 91765
Facsimile: (866) 447-4293

**Sent via U.S. Mail, Facsimile, and E-mail**

Re:        *Claim No. 0517768081 QKT; 344 S. Las Palmas, Los Angeles, CA*
Subject:     *Notice of Representation; Notice of Intent to File Bad Faith Claim*
Our Client:  *Alan Baker and Lin Oliver*

Dear Mr. Carrasco:

Be advised I have been retained to represent Alan Baker and Lin Oliver (aka Linda Baker) with respect to the above-referenced claim. All further communications, letters, calls and e-mails should be directed to my office.

**A. Overview of Claim**

My understanding of the claim history is that a water loss occurred in the later part of September of 2018 at my clients' residence located at 344 S. Las Palmas ("Subject Property") in the Hancock Park neighborhood of Los Angeles. A spontaneous leak occurred in an upstairs bathroom while the Bakers were out of town. A tremendous amount of water inundated their home. The water leak devastated the original plaster walls, flooring, and finishes in the greater part of the historic two-story manse.

ServPro provided water remediation services, at the cost of approximately sixty-five thousand dollars ($65,000.00) – a sum which reflects the magnitude of the catastrophe. They removed thousands of square feet of period plaster and flooring ruined by the water. Attached as Exhibit "A" to this correspondence is a representative photograph from the living room of my clients' home after the demolition. The picture illustrates the

1

general condition of more than half the interior of the house after the loss was remediated. The Bakers were forced to relocate to a nearby home, while extensive repairs are undertaken. They remain displaced currently as a result of Allstate's dilatory claim handling, and now Allstate has added insult to injury by threatening to cut off their temporary housing.

The Subject Property is a charming four-bedroom, four bath home constructed in 1925. It is approximately 4,143 square feet, and boasts a pool and small detached pool house, which was unaffected by the recent loss. The real estate valuation website "Zillow" lists the current estimated fair market value of the .34-acre property as 3.623 million dollars.

The value and "curb appeal" of the house lies in its historic character and detail. Hancock Park is one of the oldest and most prestigious neighborhoods in Los Angeles. The subdivision was originally purchased by Major Henry Hancock in 1863 from the family of Jose Jorge Rocha, one of the original recipients of the Rancho La Brea land grant from Mexico. His son, G. Allan Hancock, inherited the property and developed the neighborhood in the 1920's with money the Hancock family earned from oil drilling in the former Rancho La Brea area now known as the "La Brea Tar Pits.".

Hancock Park is a recognized "Historic Preservation Overlay Zone" by the City of Los Angeles[1], as outstanding architects of the era designed the palatial two-story, single family residences in various Period Revival styles (including Tudor Revival, English Revival, Spanish Colonial Revival, Mediterranean Revival, Monterey Revival, and American Colonial Revival) for important members of Los Angeles society. Virtually all of the residences are set back 50 feet from the street, as insisted upon by G. Allan Hancock. The typical home in Hancock Park includes a side driveway leading through a *porte cochere* to a rear garage.

Past prominent Hancock Park residents include industrialist Howard Hughes, entertainers Mae West and Nat King Cole, Broadway Department Store magnate Arthur Letts, Jr., and architect William Pereira. Hancock Park is the location of numerous consular residences, including the famous residence of the Los Angeles British Consul General located at 450 S. June Street, in a home designed by celebrated architect Wallace Neff. The residence was where Prince William, Duke of Cambridge and Catherine, Duchess of Cambridge stayed in July 2011 on their first visit to the United States after their wedding.

---

[1] The Los Angeles City Council passed a resolution designating Hancock Park a HPOZ in 2006. A true and correct copy of the ordinance is attached hereto as Exhibit "B"

The Subject Property is prototypical example of a classic Tudor Revival home from the 1920's and is considered a "Contributing Structure" under the City's Historic Preservation Overlay Zone ordinance, meaning any changes to the property must go through an extensive review process with the city. As a historic home, special care must be taken in repairing the devastating damage caused by the covered loss.

I understand the original contractor estimate from reputable contractors Mackey Construction & Restoration was approximately $390,000.00. Allstate apparently obtained an estimate for $144,000.00 from an unknown contractor in San Dimas and have refused to move from that position. A second estimate was obtained from a third-party adjuster in Los Angeles at $365,000.00, which Allstate disregarded.

Allstate has failed to reasonably respond to the Bakers, and instead placed the profits of the company before the interests of their insureds. As the adjuster, you have lost estimates, failed to reasonably justify lowball estimates, and failed to consider reasonable estimates and budgets for the critical repairs to my clients' home. You have unreasonably refused to authorize necessary work and finishes that are required to return the Bakers' home to its pre-loss condition, including refusing to authorize appropriate amounts for the ninety plus (90+) year old original flooring that is being replaced.

In considering the reason for Allstate's miserly treatment of their long-time customers, I considered whether a policy-limits issue was to blame. I was not surprised to learn, however, that Dwelling Protection limits (with Building Structure Reimbursement Extended Limits) in the amount of $1,189,568.00 are available, as well as Personal Property Protection of $892,176.00 as part of their "Deluxe Plus Homeowners Policy" (Allstate Policy Number 014355912). In other words, there is ample coverage to pay the $395,000.00 bill for the repair of my clients' historic home. [2]

There is no reasonable basis for the way you have been handling this claim. Your conduct belies a clear intent to shortchange and cheat the Bakers, probably to increase your perceived job performance and put more money into Allstate's swollen pockets.

/ / /

---

[2] Allstate's consolidated net income reported in 2018 was $2.1 billion dollars on $35 billion dollars of revenue.

## B. Overview of California Law Regarding Bad Faith Insurance Practices and Applicable Policy Language

The wrongful failure to provide coverage or defend a claim is a breach of contract. (*Isaacson v. California Insurance Guarantee Assn.* (1988) 44 Cal.3d 775, 791.) A copy of the "Deluxe Plus Homeowners Policy" in question is attached hereto as Exhibit "C." Allstate is in breach of the policy by failing to timely pay sums due for covered losses thereunder.

On page 5 of the policy, Allstate promises to "cover sudden and accidental direct physical loss to property described in Dwelling Protection-Coverage A and Other Structures Protection-Coverage B except as limited or excluded in this policy." The loss in this case is not excluded, and the policy limits have not been approached. The policy includes a "Building Codes" provision on page 10 that provides additional coverage to comply with local building codes after a covered loss, which would include the HPOZ.

On page 11 of the policy, Allstate agrees to pay "when a covered loss exceeds the deductible shown on the Policy Declarations." The "Building Structure Reimbursement" provision on page 12 further provides that the insureds will be paid the cost of repair or rebuilding damaged property, not the "cash value" of the damage as Allstate estimates. This amount can be the lesser of:

> 1) The replacement cost of the part(s) of the building structure for equivalent construction for similar use on the same residence premises; or
>
> 2) The amount actually and necessarily spent to repair or replace the damaged building structure with equivalent construction for similar use on the same residence premises; or
>
> 3) Policy limits.

In this case, it appears Allstate summoned the cheapest contractor possible from a low-rent outlying city to provide "estimates" for the work on the Subject Property and use same as a pretext for refusing to pay the Bakers' contractor because Baldwin Construction is providing "cheaper" replacement quotes. This is classic bad faith and the type of conduct juries love to punish by awarding punitive damages against insurance companies.

///

4

Based on my discussions with Steve Mackey and Dana Mackey, the quotes Allstate is relying on from Baldwin Construction are grossly incomplete, improper, and inaccurate. You have been advised of this but have refused to justify the estimates or provide any documentation as to the credentials of Baldwin Construction.

I suspect that Baldwin Construction and their principal (and perhaps sole employee) John Petrov has never worked in Hancock Park or on any historic home in Los Angeles. I doubt Mr. Petrov would be qualified to perform interior or exterior work on a home in Hancock Park. I suspect he will not be qualified to serve as an expert in this litigated case and ultimately litigation will show there was no reasonable basis for selecting Baldwin Construction to provide a quote or relying on their estimate to deny benefits to which my clients are entitled.

As you know, there is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the Agreement. (*Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658.) For the insurer to fulfill its obligation not to impair the right of the insured to receive the benefits of the agreement, it must give at least as much consideration to the latter's interests as it does to its own. (*Egan v. Mutual of Omaha Insurance Co.* (1979) 24 Cal.3d 809, 818-819.)

To establish an insurer's 'bad faith' liability, the insured must show that the insurer has (1) withheld benefits due under the policy, and (2) that such withholding was 'unreasonable' or 'without proper cause.' The actionable withholding of benefits may consist of the denial of benefits due; paying less than due; and/or unreasonably delaying payments due." (*Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1209.) Allstate's misconduct in adjusting this claim checks all three boxes.

The covenant of good faith can be breached for objectively unreasonable conduct, regardless of the actor's motive. An insured plaintiff need only show, for example, that the insurer unreasonable refused to pay benefits; there is no requirement to establish *subjective* bad faith. (*Bosetti v. United States Life Ins. Co. in the City of New York* (2009) 175 Cal.App.4th 1208, 1236.)

Where an insurer is proven to have engaged in bad faith, they are liable to the plaintiff for tort damages including out of pocket expenses, mental suffering/anxiety/emotional distress, the cost of attorney fees to recover the insurance policy benefits, and punitive damages. (*Brandt v. Superior Court* (1985) 37 Cal.3d 813, 817.) In this case, Allstate has subjected elderly policyholders to prolonged displacement from their home, delays,

stress and inconvenience as a result of your incompetence or misfeasance. Such conduct is actionable under California law.

## C. Application of Law to Mr. Carrasco's Claims Handling

Your claims handling of this matter has been utterly unacceptable. You have delayed inspections and estimates. You have refused to approve reasonable estimates. You did not conduct a proper investigation of this claim, by failing to hire a contractor qualified to work on historic homes in the Hancock Park Historic Preservation Overlay Zone. You unreasonably denied benefits to the Bakers and "slow played" the adjustment process to wear them down and agree to reductions in the amount Allstate will pay from the amount they lawfully owe.

You have caused the Bakers to be unreasonably displaced from their home for a prolonged period of time. To make matters worse, Allstate is now threatening to end temporary housing payments by September 21, 2019, despite making completion of repairs by that time impossible. Your actions have caused an unbearable amount of stress, anxiety and worry to the Bakers and Allstate will bear all consequences of same.

Your and Allstate's conduct as outlined herein will no longer be tolerated. The documented history of bad faith handling of this claim, in e-mails and through witnesses, is disgraceful and will expose Allstate insurance to tort damages, attorney fees, costs and punitive damages, which we will pursue.

## D. Notice of Intent to File Claim and Demand to Preserve All Evidence

I am in the process of preparing a complaint for damages against Allstate Insurance Company. You will be an important witness to my case and your deposition will be taken. You must immediately take steps to preserve all evidence and documents relating to this claim, including electronically stored information ("ESI") such as e-mails, reports, internal messaging system communications, etc. We will be seeking the production of the complete claim file, including all relevant ESI in discovery and depositions.

/ / /

If you wish to arrange for immediate payment in full of this claim on appropriate terms, let me know. Otherwise, please advise if you will accept service of process for Allstate. Govern yourself accordingly. We reserve all rights and remedies.

Sincerely,

Christopher G. Hook, Esq.
LAW OFFICES OF CHRISTOPHER G. HOOK

Cc: Steve Mackey, Mackey Construction & Restoration (by e-mail only)

/Encl.



EXHIBIT "A"



EXHIBIT "B"

ORDINANCE NO. _____ **177839** _____

An ordinance amending Section .12.04 of the Los Angeles Municipal Code by amending the zoning map.

THE PEOPLE OF THE CITY OF LOS ANGELES DO ORDAIN AS FOLLOWS:

Section 1.  Section 12.04 of the Los Angeles Municipal Code is hereby amended by changing the zones and zone boundaries shown upon a portion of the zone map attached thereto and made a part of Article 2, Chapter 1 of the Los Angeles Municipal Code, so that such portion of the zoning map shall be as follows:

Exhibit E-2



Contributing Properties

Non-Contributing Properties

Surrounding Parcels

Hancock Park HPOZ
**Planning Department Recommended Boundaries**

Prepared by City of Los Angeles Planning Department • Complex Services Section • July 2006

Section 2.  The City Clerk shall certify to the passage of this ordinance and have it published in accordance with Council policy, either in a daily newspaper circulated in the City of Los Angeles or by posting for ten days in three public places in the City of Los Angeles: one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall; one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall East; and one copy on the bulletin board located at the Temple Street entrance to the Los Angeles County Hall of Records.

I hereby certify that this ordinance was passed by the Council of the City of Los Angeles, at its meeting of __AUG 0 1 2006__ .

FRANK T. MARTINEZ, City Clerk

By _____
Deputy

Approved    AUG 1 1 2006

_____
Mayor

Approved as to Form and Legality

ROCKARD J. DELGADILLO, City Attorney

By

_____ City Attorney

File No.  *04- 1847*

**Pursuant to Section 558 of the City Charter, the City Planning Commission on May 11, 2006, recommended this ordinance be adopted by the City Council.**

_____

**Gabriele Williams**
**Commission Executive Assistant II**

N:\EXEC\Commission\CPC\2005\Case Processing\Forms\Signature Page - CPC.wpd

## DECLARATION OF POSTING ORDINANCE

I, MARIA C. RICO, state as follows:  I am, and was at all times hereinafter mentioned, a resident of the State of California, over the age of eighteen years, and a Deputy City Clerk of the City of Los Angeles, California.

Ordinance No. **177839** - **Establishment of the Hancock Park Historic Preservation Overlay Zone - CPC 2002-230 HPOZ** - a copy of which is hereto attached, was finally adopted by the Los Angeles City Council on **August 1, 2006**, and under the direction of said City Council and the City Clerk, pursuant to Section 251 of the Charter of the City of Los Angeles and Ordinance No. 172959, on **August 23, 2006**, I posted a true copy of said ordinance at each of three public places located in the City of Los Angeles, California, as follows: 1) one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall; 2) one copy on the bulletin board located at the Main Street entrance to the Los Angeles City Hall East; 3) one copy on the bulletin board located at the Temple Street entrance to the Hall of Records of the County of Los Angeles.

Copies of said ordinance were posted conspicuously beginning on **August 23, 2006** and will be continuously posted for ten or more days.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this **23rd** day of **August 2006** at Los Angeles, California.

Maria C. Rico, Deputy City Clerk

**Ordinance Effective Date:**   **Oct. 2, 2006**   **Council File No.** **04-1847**

Rev. (2/21/06)



EXHIBIT "C"

# Deluxe Plus
# Homeowners Policy

AP337

Policy number

Policy effective

Policyholders

Your Allstate agency is



**The Company Named in the Policy Declarations**
A Stock Company—Home Office: 2775 Sanders Road, Northbrook, Illinois 60062


You're in good hands.

## Table of Contents

**General** ................................................................. 3
Definitions Used In This Policy............................................ 3
Insuring Agreement ....................................................... 3
Agreements We Make With You............................................. 4
Conformity To State Statutes............................................. 4
Coverage Changes......................................................... 4
Policy Transfer.......................................................... 4
Continued Coverage After Your Death...................................... 4
Cancelation.............................................................. 4
Concealment Or Fraud..................................................... 4

**Section I—Your Property**
**Dwelling Protection–Coverage A** ....................................... 4
Property We Cover Under Coverage A ...................................... 4
Property We Do Not Cover Under Coverage A ............................... 5
**Other Structures Protection–Coverage B** .............................. 5
Property We Cover Under Coverage B....................................... 5
Property We Do Not Cover Under Coverage B ............................... 5
Losses We Cover Under Coverages A and B.................................. 5
Losses We Do Not Cover Under Coverages A and B .......................... 5
**Personal Property Protection–Coverage C** ............................. 6
Property We Cover Under Coverage C....................................... 6
Limitations On Certain Personal Property................................. 6
Property We Do Not Cover Under Coverage C................................ 7
Losses We Cover Under Coverage C......................................... 7
Losses We Do Not Cover Under Coverage C ................................. 8

**Additional Protection**.................................................. 9
Additional Living Expense................................................ 9
Credit Card, Bank Fund Transfer Card, Check Forgery
    And Counterfeit Money................................................ 9
Debris Removal.......................................................... 10
Emergency Removal Of Property........................................... 10
Fire Department Charges................................................. 10
Temporary Repairs After A Loss.......................................... 10
Trees, Shrubs, Plants And Lawns......................................... 10
Temperature Change...................................................... 10
Power Interruption...................................................... 10
Building Codes.......................................................... 10
Arson Reward ........................................................... 10
Collapse................................................................ 10
Land.................................................................... 11
Lock Replacement........................................................ 11

**Section I Conditions**.................................................. 11
Deductible.............................................................. 11
Insurable Interest And Our Liability.................................... 11
What You Must Do After A Loss........................................... 11
Our Settlement Options.................................................. 11
How We Pay For A Loss................................................... 11
Our Settlement Of Loss.................................................. 13
Appraisal............................................................... 13

Abandoned Property...................................................... 13
Permission Granted To You............................................... 13
Our Rights To Recover Payment........................................... 13
Our Rights To Obtain Salvage............................................ 13
Suit Against Us......................................................... 13
Loss To A Pair Or Set................................................... 13
Glass Replacement....................................................... 13
No Benefit To Bailee.................................................... 13
Other Insurance......................................................... 13
Property Insurance Adjustment........................................... 13
Mortgagee............................................................... 14

**Section II—Family Liability And Guest Medical Protection** ........... 14
**Family Liability Protection–Coverage X** ............................. 14
Losses We Cover Under Coverage X........................................ 14
Losses We Do Not Cover Under Coverage X................................. 14
**Guest Medical Protection–Coverage Y** ................................ 15
Losses We Cover Under Coverage Y........................................ 15
Losses We Do Not Cover Under Coverage Y................................. 15

**Additional Protection** .............................................. 16
Claim Expenses.......................................................... 16
Emergency First Aid..................................................... 16
Damage To Property Of Others............................................ 16

**Section II Conditions**............................................... 17
What You Must Do After An Accidental Loss................................ 17
What An Injured Person Must Do—
    Guest Medical Protection–Coverage Y................................. 17
Our Payment Of Loss—Guest Medical Protection–Coverage Y................. 17
Our Limits Of Liability................................................. 17
Bankruptcy.............................................................. 17
Our Rights To Recover Payment—Family Liability Protection–
    Coverage X.......................................................... 17
Suit Against Us......................................................... 17
Other Insurance—Family Liability Protection–Coverage X ................. 17

**Section III—Optional Protection**..................................... 17
**Optional Coverages You May Buy**...................................... 17
Increased Coverage On Business Property–Coverage BP..................... 17
Increased Coverage On Electronic Data Processing Equipment–
    Coverage DP......................................................... 17
Fire Department Charges–Coverage F...................................... 18
Loss Assessments–Coverage G............................................. 18
Extended Coverage On Jewelry, Watches And Furs–Coverage J .............. 18
Incidental Office, Private School Or Studio–Coverage K.................. 18
Increased Coverage On Money–Coverage M ................................. 19
Business Pursuits–Coverage P............................................ 19
Increased Coverage On Securities–Coverage S............................. 19
Satellite Dish Antennas–Coverage SD.................................... 19
Portable Cellular Communication Systems–Coverage SE..................... 19
Increased Coverage On Theft Of Silverware–Coverage ST................... 19

Policy number:

Policy effective date:

## General

### Definitions Used In This Policy

1. **"You"** or **"your"**—means the person named on the Policy Declarations as the insured and that person's resident spouse.

2. **"Allstate," "we," "us,"** or **"our"**—means the company named on the Policy Declarations.

3. **"Insured person(s)"**—means **you** and, if a resident of **your** household:
   a) any relative; and
   b) any dependent person in **your** care.

   Under **Family Liability Protection-Coverage X** and **Guest Medical Protection-Coverage Y**, "**insured person**" also means:
   c) any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an **insured person**. **We** do not cover any person or organization using or having custody of animals or watercraft in any **business**, or without permission of the owner.
   d) with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an **insured person**.

4. **"Bodily injury"**—means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include:
   a) any venereal disease;
   b) herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to a) through e) listed above.

   Under **Guest Medical Protection-Coverage Y**, **bodily injury** means physical harm to the body, including sickness or disease, except that **bodily injury** does not include:
   a) any venereal disease;
   b) herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to a) through e) listed above.

5. **"Building structure"**—means a structure with walls and a roof.

6. **"Business"**—means:
   a) any full- or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured person** or relative of an **insured person** for economic gain is also a **business**.

However, the mutual exchange of home day care services is not considered a **business**:
   b) any property rented or held for rental by an **insured person**. Rental of **your residence premises** is not considered a **business** when:
      1) it is rented occasionally for residential purposes;
      2) a portion is rented to not more than two roomers or boarders; or
      3) a portion is rented as a private garage.

7. **"Residence premises"**—means the **dwelling**, other structures and land located at the address stated on the Policy Declarations.

8. **"Insured premises"**—means:
   a) the **residence premises**; and
   b) under **Section II** only:
      1) the part of any other premises, other structures and grounds used by **you** as a residence. This includes premises, structures and grounds **you** acquired for **your** use as a private residence while this policy is in effect;
      2) any part of a premises not owned by an **insured person** but where an **insured person** is temporarily living;
      3) cemetery plots or burial vaults owned by an **insured person**;
      4) vacant land, other than farmland, owned by or rented to an **insured person**;
      5) land owned by or rented to an **insured person** where a one-, two-, three-, or four-family dwelling is being built as that person's residence;
      6) any premises used by an **insured person** in connection with the **residence premises**;
      7) any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

9. **"Occurrence"**—means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

10. **"Property damage"**—means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

11. **"Residence employee"**—means an employee of an **insured person** while performing duties arising out of and in the course of employment in connection with the maintenance or use of **your residence premises**. This includes similar duties performed elsewhere for an **insured person**, not in connection with the **business** of an **insured person**.

12. **"Dwelling"**—means a one-, two-, three-, or four-family **building structure**, identified as the insured property on the Policy Declarations, where you reside and which is principally used as a private residence.

### Insuring Agreement

In reliance on the information **you** have given **us**, **Allstate** agrees to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

Deluxe Plus Homeowners Policy
Policy number:
Policy effective date:

Page **4** of 19

 **Allstate**
You're in good hands.

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The policy period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

The terms of this policy impose joint obligations on the person named on the Policy Declarations as the insured and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

The terms of this policy impose joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

## Agreements We Make With You
**We** make the following agreements with **you**:

### Conformity To State Statutes
When the policy provisions conflict with the statutes of the state in which the **residence premises** is located, the provisions are amended to conform to such statutes.

### Coverage Changes
When **Allstate** broadens coverage during the premium period without charge, **you** have the new features if **you** have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.

The coverage provided and the premium for the policy is based on information **you** have given **us**. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, is incorrect or incomplete, **we** may adjust **your** coverage and premium accordingly during the policy period.

Any calculation of **your** premium or changes in **your** coverage will be made using the rules, rates and forms on file, if required, for **our** use in **your** state. The rates in effect at the beginning of **your** current premium period will be used to calculate any change in **your** premium.

### Policy Transfer
**You** may not transfer this policy to another person without **our** written consent.

### Continued Coverage After Your Death
If **you** die, coverage will continue until the end of the premium period for:
1) **your** legal representative while acting as such, but only with respect to the **residence premises** and property covered under this policy on the date of **your** death.
2) an **insured person**, and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

## Cancellation
**Your** Right to Cancel:
**You** may cancel this policy by notifying **us** of the future date **you** wish to stop coverage.

**Our** Right to Cancel:
**Allstate** may cancel this policy by mailing notice to **you** at the mailing address shown on the Policy Declarations. When this policy has been in effect for less than 60 days, and it is not a renewal with **us**, **we** may cancel this policy for any reason by giving **you** at least 10 days notice before the cancellation takes effect.

When the policy has been in effect for 60 days or more, or if it is a renewal with **us**, **we** may cancel this policy for one or more of the following reasons:
1) non-payment of premium;
2) the policy was obtained by misrepresentation, fraud or concealment of material facts;
3) material misrepresentation, fraud or concealment of material fact in presenting a claim, or violation of any of the policy terms; or
4) there has been a substantial change or increase in hazard in the risk **we** originally accepted.

If the cancellation is for non-payment of premium, **we** will give **you** at least 10 days notice. If the cancellation is for any of the other reasons, **we** will give **you** at least 30 days notice.

**Our** mailing the notice of cancellation to **you** will be deemed proof of notice. Coverage under this policy will terminate on the effective date and hour stated on the cancellation notice. **Your** return premium, if any, will be calculated on a pro rata basis and refunded at the time of cancellation or as soon as possible. However, refund of unearned premium is not a condition of cancellation.

**Our** Right Not to Renew or Continue:
**Allstate** has the right not to renew or continue the policy beyond the current premium period. If **we** do not intend to continue or renew the policy, **we** will mail **you** notice at least 30 days before the end of the premium period. **Our** mailing the notice of nonrenewal to **you** will be deemed proof of notice.

### Concealment Or Fraud
This policy is void if it was obtained by misrepresentation, fraud or concealment of material facts. If it is determined that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy.

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

## Section I—Your Property

## Dwelling Protection–Coverage A

### Property We Cover Under Coverage A:
1. **Your dwelling** including attached structures. Structures connected to **your dwelling** by only a fence, utility line, or similar connection are not considered attached structures.

Deluxe Plus Homeowners Policy

Policy number:

Policy effective date:

2. Construction materials and supplies at the **residence premises** for use in connection with **your dwelling**.

3. Wall-to-wall carpeting fastened to **your dwelling**.

**Property We Do Not Cover Under Coverage A:**

1. Any structure including fences or other property covered under **Other Structures Protection–Coverage B**.

2. Land, except as specifically provided in **Section I, Additional Protection** under item 13., **Land**.

3. Satellite dish antennas and their systems, whether or not attached to **your dwelling**.

## Other Structures Protection–Coverage B

**Property We Cover Under Coverage B:**

1. Structures at the address shown on the Policy Declarations separated from **your dwelling** by clear space.

2. **Structures** attached to **your dwelling** by only a fence, utility line, or similar connection.

3. Construction materials and supplies at the address of the **residence premises** for use in connection with structures other than **your dwelling**.

4. Wall-to-wall carpeting fastened to other **building structures**.

**Property We Do Not Cover Under Coverage B:**

1. Structures used in whole or in part for **business** purposes.

2. Any structure or other property covered under **Dwelling Protection–Coverage A**.

3. Land, no matter where located, or the replacement, rebuilding, restoration, stabilization or value of any such land.

4. Construction materials and supplies at the address of the **residence premises** for use in connection with the **dwelling**.

5. Satellite dish antennas and their systems, whether or not attached to building structures.

**Losses We Cover Under Coverages A and B:**

**We** will cover sudden and accidental direct physical loss to property described in **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B** except as limited or excluded in this policy.

**Losses We Do Not Cover Under Coverages A and B:**

**We** do not cover loss to the property described in **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B** consisting of or caused by:

1. Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a **sump pump**, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1. through 4. listed above.

5. Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

   **We** do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure** or other land at the **residence premises**, except as specifically provided in **Section I, Additional Protection** under item 10., **Building Codes**.

   **We** do cover sudden and accidental direct physical loss caused by actions of civil authority to prevent the spread of fire.

7. The failure by any **insured person** to take all reasonable steps to preserve property when the property is endangered by a cause of loss **we** cover.

8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

9. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:

   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether or not the **insured person** is actually charged with, or convicted of a crime.

10. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

    **We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

11. War or warlike acts, including, but not limited to, insurrection, rebellion or revolution.

Deluxe Plus Homeowners Policy
Policy number:
Policy effective date:

Page **6** of 19

**Allstate.**
You're in good hands.

12. Collapse, except as specifically provided in **Section I, Additional Protection** under item 12., **Collapse**.

13. Soil conditions, including but not limited to, corrosive action, chemicals, compounds, elements, suspensions, crystal formations or gels in the soil.

14. Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

In addition, **we** do not cover loss consisting of or caused by any of the following:

15. a) wear and tear, aging, marring, scratching, deterioration, inherent vice, or latent defect;
    b) mechanical breakdown;
    c) growth of trees, shrubs, plants or lawns whether or not such growth is above or below the surface of the ground;
    d) rust or other corrosion, mold, wet or dry rot;
    e) contamination, including, but not limited to the presence of toxic, noxious, or hazardous gasses, chemicals, liquids, solids or other substances at the **residence premises** or in the air, land or water serving the **residence premises**;
    f) smog, smoke from the manufacturing of any controlled substance, agricultural smudging and industrial operations;
    g) settling; cracking; shrinking; bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings;
    h) insects, rodents, birds or domestic animals. **We** do cover the breakage of glass or safety glazing materials caused by birds; or
    i) seizure by government authority.

If any of a) through h) cause the sudden and accidental escape of water or steam from a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system within **your dwelling**, **we** cover the direct physical damage caused by the water or steam. If loss to covered property is caused by water or steam not otherwise excluded, **we** will cover the cost of tearing out and replacing any part of **your dwelling** necessary to repair the system or appliance. This does not include damage to the defective system or appliance from which the water escaped.

16. Freezing of plumbing, fire protective sprinkler systems, heating or air conditioning systems or household appliances, or discharge, leakage or overflow from within the systems or appliances caused by freezing, while the **building structure** is vacant, unoccupied or being constructed unless **you** have used reasonable care to:
    a) maintain heat in the **building structure**; or
    b) shut off the water supply and drain the system and appliances.

17. Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not. This exclusion applies only to fences, pavements, patios, swimming pools, foundations, retaining walls, bulkheads, piers, wharves or docks.

18. Seepage, meaning continuous or repeated seepage or leakage over a period of weeks, months, or years, of water, steam or fuel:

    a) from a plumbing, heating, air conditioning or automatic fire protection system or from within a domestic appliance; or
    b) from, within or around any plumbing fixtures, including, but not limited to shower stalls, shower baths, tub installations, sinks or other fixtures designed for the use of water or steam.

19. Theft from **your residence premises** while **your dwelling** is under construction, or of materials and supplies for use in construction, until **your dwelling** is completed and occupied.

20. Vandalism or Malicious Mischief if **your dwelling** is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

21. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

22. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a) planning, zoning, development, surveying, siting;
    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, renovation or remodeling; or
    d) maintenance;

    of property whether on or off the **residence premises** by any person or organization.

23. **We** do not cover loss to covered property described in **Dwelling Protection–Coverage A** or **Other Structures Protection– Coverage B** when:
    a) there are two or more causes of loss to the covered property; and
    b) the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover**, items 1. through 22. above.

## Personal Property Protection–Coverage C

### Property We Cover Under Coverage C:

1. Personal property owned or used by an **insured person** anywhere in the world. When personal property is located at a residence other than the **residence premises**, coverage is limited to 10% of **Personal Property Protection–Coverage C**. This limitation does not apply to personal property in a newly acquired principal residence for the 30 days immediately after **you** begin to move property there or to personal property in student dormitory, fraternity or sorority housing.

2. At **your** option, personal property owned by a guest or **residence employee** while the property is in a residence **you** are occupying.

### Limitations On Certain Personal Property:

Limitations apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under **Personal Property Protection–Coverage C**. The total amount of coverage for each group in any one loss is as follows:

Deluxe Plus Homeowners Policy

Policy number:

Policy effective date:

1.  $   200  — Money, bullion, banknotes, coins and other numismatic property.

2.  $   200  — Property used or intended for use in a **business** while the property is away from the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

3.  $ 2,000  — Property used or intended for use in a **business**, including property held as samples or for sale or delivery after sale, while the property is on the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

4.  $ 1,000  — Trading cards, subject to a maximum amount of $250 per item.

5.  $ 1,000  — Accounts, bills, deeds, evidences of debt, letters of credit, notes other than banknotes, passports, securities, tickets, and stamps, including philatelic property.

6.  $ 1,000  — Manuscripts, including documents stored on electronic media.

7.  $ 2,000  — Watercraft, including their attached or unattached trailers, furnishings, equipment, parts and motors.

8.  $ 1,000  — Trailers not used with watercraft.

9.  $ 2,500  — Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, platinum and furs, including any item containing fur which represents its principal value: subject to a maximum amount of $1,000 per item.

10. $ 2,000  — Any motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.

11. $ 3,000  — Theft of firearms.

12. $ 2,500  — Theft of silverware, pewterware and goldware.

13. $ 5,000  — Electronic data processing equipment and the recording or storage media used with that equipment whether or not the equipment is used in a **business**. Recording or storage media will be covered only up to:
    a)   the retail value of the media, if pre-programmed; or
    b)   or the retail value of the media in blank or unexposed form, if blank or self-programmed.

14. $ 10,000 — Theft of rugs, including, but not limited to, any handwoven silk or wool rug, carpet, tapestry, wall hanging or other similar article whose principal value is determined by its color, design, quality of wool or silk, quality of weaving, condition or age: subject to a maximum amount of $2,500 per item.

**Property We Do Not Cover Under Coverage C:**

1.  Personal property specifically described and insured by this or any other insurance.

2.  Animals.

3.  Motorized land vehicles, including, but not limited to any land vehicle powered or assisted by a motor or engine. **We** do not cover any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. **We** do cover motorized land vehicles designed for assisting the handicapped or used solely for the service of the **insured premises** and not licensed for use on public roads.

4.  Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.

5.  Property of roomers, boarders, tenants not related to an **insured person**.

6.  Property located away from the **residence premises** and rented or held for rental to others.

7.  Any device, cellular communication system, radar signal reception system, accessory or antenna designed for reproducing, detecting, receiving, transmitting, recording or playing back data, sound or picture which may be powered by electricity from a motorized land vehicle or watercraft and while in or upon a motorized land vehicle or watercraft.

8.  Satellite dish antennas and their systems.

**Losses We Cover Under Coverage C:**

**We** will cover sudden and accidental direct physical loss to the property described in **Personal Property Protection–Coverage C**, except as limited or excluded in this policy, caused by:

1.  Fire or Lightning.

2.  Windstorm or Hail.

    **We** do not cover:
    a)   loss to covered property inside a **building structure**, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the **damaged** roof or wall:
    b)   loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed **building structure**. However, **we** do cover canoes and rowboats on the **residence premises**.

3.  Explosion.

4.  Riot or Civil Commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5.  Aircraft, including self-propelled missiles and spacecraft.

6.  Vehicles.

7.  Smoke.

Deluxe Plus Homeowners Policy
Policy number:
Policy effective date:

Page **8** of 19


You're in good hands.

We do not cover loss caused by smoke from the manufacturing of controlled substances, agricultural smudging or industrial operations.

8. Vandalism and Malicious Mischief.

We do not cover vandalism or malicious mischief if **your** dwelling has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

9. Falling objects.

We do not cover loss to personal property inside a **building structure** unless the falling object first damages the exterior walls or roof of the **building structure**.

10. Weight of ice, snow or sleet which causes damage to personal property in a **building structure**, but only if the **building structure** is damaged due to the weight of ice, snow or sleet.

11. Increase or decrease of artificially generated electrical current to electrical appliances, fixtures and wiring.

12. Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protection system or an appliance for heating water.

13. Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protection system, or from a household appliance due to accidental discharge or overflow.

We do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

14. Freezing of a plumbing, heating or air conditioning system or a household appliance.

We do not cover loss at the **residence premises** under perils 12., 13., and 14. caused by or resulting from freezing while the **building structure** is vacant, unoccupied or under construction unless **you** have used reasonable care to:
a) maintain heat in the **building structure**; or
b) shut off the water supply and drain the water from the systems and appliances.

15. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

We do not cover:
a) theft or attempted theft committed by an **insured person**;
b) theft in or from the **residence premises** while under construction or of materials and supplies for use in construction, until the **dwelling** is completed and occupied:

c) theft of any property while at any other residence owned, rented to or occupied by an **insured person** unless the **insured person** is temporarily residing there:
d) theft of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the **residence premises**;
e) theft from that part of the **residence premises** rented by **you** to other than an **insured person**.

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure** on the **residence premises**. This does not include damage to the glass.

## Losses We Do Not Cover Under Coverage C:

We do not cover loss to the property described in **Personal Property Protection–Coverage C** caused by or consisting of:

1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2. Water or any other substance that backs up through sewers or drains.

3. Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4. Water or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

We do cover sudden and accidental direct physical loss caused by fire, explosion or theft resulting from items 1. through 4. listed above.

5. Earth movement of any type, including, but not limited to earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole, erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

We do cover sudden and accidental direct physical loss caused by fire, explosion, theft or breakage of glass or safety glazing materials resulting from earth movement.

6. Enforcement of any building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, placement or demolition of any **building structure** or other structure at the **residence premises**, except as specifically provided in **Section I, Additional Protection** under item 10., **Building Codes**.

We do cover sudden and accidental direct physical loss to covered property caused by actions of civil authority to prevent the spread of fire.

7. The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

Deluxe Plus Homeowners Policy

Policy number:

Policy effective date:

8. Any substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an **insured person**.

9. Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
   a) may be reasonably expected to result from such acts; or
   b) is the intended result of such acts.

   This exclusion applies regardless of whether or not the **insured person** is actually charged with or convicted of a crime.

10. Nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss caused by nuclear action is not considered loss by fire, explosion or smoke.

    **We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

11. Vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

12. War or warlike acts, including, but not limited to insurrection, rebellion or revolution.

13. Weather Conditions that contribute in any way with a cause of loss excluded in this section to produce a loss.

14. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
    a) planning, zoning, development, surveying, siting;
    b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
    c) materials used in repair, construction, renovation or remodeling; or
    d) maintenance

    of property whether on or off the **residence premises** by any person or organization.

15. **We** do not cover loss to covered property described in **Personal Property Protection–Coverage C** when:
    a) there are two or more causes of loss to the covered property; and
    b) the predominant cause(s) of loss is (are) excluded under **Losses We Do Not Cover**, items 1. through 14. above.

## Additional Protection

1. **Additional Living Expense**
   a) **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover makes **your residence premises** uninhabitable.

      Payment for covered additional living expense will be limited to the least of the following:
      1) the time period required to repair or replace the property **we** cover, using due diligence and dispatch; or
      2) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere;
      3) 12 months.

   b) **We** will pay **your** lost fair rental income resulting from a covered loss, less charges and expenses which do not continue, when a loss **we** cover makes the part of the **residence premises you** rent to others, or hold for rental, uninhabitable. **We** will pay for lost fair rental income for the shortest time required to repair or replace the part rented or held for rental but not to exceed 12 months.

   c) **We** will pay the reasonable and necessary increase in living expenses and the lost fair rental income for up to two weeks should civil authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by a peril **we** insure against.

      These periods of time are not limited by the termination of this policy.

      **We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

      No deductible applies to this protection.

2. **Credit Card, Bank Fund Transfer Card, Check Forgery And Counterfeit Money**
   **We** will pay for loss:
   a) that an **insured person** is legally required to pay for the unauthorized use of any credit card or bank fund transfer card issued to or registered in the name of an **insured person**;
   b) caused by forgery or alteration of a check or negotiable instrument made or drawn upon an **insured person's** account;
   c) to an **insured person** through acceptance in good faith of counterfeit United States or Canadian paper currency.

   **Our** maximum limit of liability for any one loss is $1,000. All loss due to forgery or unauthorized use by or involving any one person is considered one loss.

   **We** do not cover:
   a) loss arising from any **business** of an **insured person**;
   b) loss caused by or at the direction of an **insured person** or any other person who has been entrusted with any credit card or bank fund transfer card;
   c) loss arising out of dishonesty of an **insured person**.

   When loss is discovered, the **insured person** must give **us** immediate written notice. If the loss involves a credit card, charge plate or bank fund transfer card, the **insured person** must also give immediate written notice to the company or bank that issued the card or plate. Failure to comply with the terms and conditions of the card or plate voids this protection.

   **We** will pay only for loss occurring during the policy period, including those losses discovered and reported to **us** within one year after the policy has terminated. **We** have the right to investigate and settle any claim or suit as **we** deem appropriate. Full payment of the amount of insurance for any one loss ends **our** obligation under each claim or suit arising from the loss.

 **Allstate**
You're in good hands.

We will defend any suit brought against an **insured person** for the enforcement of payment covered under paragraph 2.a) of this protection. The defense will be at **our** expense, with counsel of **our** choice.

We have the option to defend an **insured person** or the **insured person's** bank against a suit for the enforcement of payment covered under paragraph 2.b) of this protection. The defense will be at **our** expense, with counsel of **our** choice.

No deductible applies to this protection.

3. **Debris Removal**
   **We** will pay reasonable expenses **you** incur to remove debris of covered property damaged by a loss **we** cover. If the loss to the covered property and the cost of debris removal are more than the limit of liability shown on the Policy Declarations for the covered property, **we** will pay up to an additional 5% of that limit for debris removal.

4. **Emergency Removal Of Property**
   **We** will pay for sudden and accidental direct physical loss to covered property from any cause while removed from a premises because of danger from a loss **we** cover. Protection is limited to a 30-day period from date of removal. This protection does not increase the limit of liability that applies to the covered property.

5. **Fire Department Charges**
   **We** will pay up to $500 for service charges made by fire departments called to protect **your** property from a loss **we** cover at the **residence premises**. No deductible applies to this protection.

6. **Temporary Repairs After A Loss**
   **We** will reimburse **you** up to $5,000 for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover.
   This coverage does not increase the limit of liability applying to the property being repaired.

7. **Trees, Shrubs, Plants And Lawns**
   **We** will pay up to an additional 5% of the limit of liability shown on the Policy Declarations under **Dwelling Protection–Coverage A** for loss to trees, shrubs, plants and lawns at the address of the **residence premises**. **We** will not pay more than $500 for any one tree, shrub, or plant including expenses incurred for removing debris. This coverage applies only to direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the **residence premises**, vandalism or malicious mischief, theft or collapse of a **building structure** or any part of a **building structure**.

   **We** will pay up to $500 for reasonable expenses you incur for the removal of debris of trees at the address of the **residence premises** for direct physical loss caused by windstorm, hail, or weight of ice, snow or sleet. The fallen tree must have caused damage to property covered under **Dwelling Protection–Coverage A**.

We do not cover trees, shrubs, plants, or lawns grown for **business** purposes.

8. **Temperature Change**
   **We** will pay for loss to covered personal property in a **building structure** at the **residence premises** resulting from a change in temperature. The change in temperature must result from a covered loss to the **building structure**.

   This coverage does not increase the limit of liability applying to the damaged property.

9. **Power Interruption**
   **We** will pay for loss to the contents of freezers and refrigerated units on the **residence premises** caused by the interruption of power which occurs off the **residence premises**. If a power interruption is known to an **insured person**, all reasonable means must be used to protect the contents of freezers and refrigerated units.

   This coverage does not increase the limit of liability applying to the damaged property.

10. **Building Codes**
    **We** will pay up to 10% of the amount of insurance shown on the Policy Declarations under **Dwelling Protection–Coverage A** to comply with local building codes after a covered loss to the **dwelling** and when repair or replacement results increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair or demolition of the **dwelling**.

11. **Arson Reward**
    **We** will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Section I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

12. **Collapse**
    **We** will cover:
    a) the entire collapse of a covered **building structure**;
    b) the entire collapse of part of a covered **building structure**; and
    c) direct physical loss to covered property caused by a) or b) above.

    For coverage to apply, the collapse of a **building structure** specified in a) or b) above must be a sudden and accidental direct physical loss caused by one or more of the following:
    a) a loss **we** cover under **Section I, Personal Property Protection–Coverage C**;
    b) hidden decay of the **building structure**;
    c) hidden damage to the **building structure** caused by insects or vermin;
    d) weight of persons, animals, equipment or contents;
    e) weight of rain or snow which collects on a roof;
    f) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This protection does not change the limit of liability that applies to the covered property.

**13.  Land**

If a sudden and accidental direct physical loss results in both a covered loss to the **dwelling**, other than the breakage of glass or safety glazing material, and a loss of land stability, **we** will pay up to $10,000 as an additional amount of insurance for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land necessary to support that part of the **dwelling** sustaining the covered loss.

The **Section I, Losses We Do Not Cover Under Coverages A and B** reference to earth movement does not apply to the loss of land stability provided under this Additional Protection.

**14.  Lock Replacement**

**Dwelling Protection–Coverage A** is extended to include reasonable expenses **you** incur to replace or re-key exterior door locks at the **residence premises** with locks or cylinders of like kind and quality. Coverage is provided when a key to a lock is stolen as part of a covered theft loss. The limit of liability under this coverage following any one theft loss is $500.

## Section I Conditions

**1.  Deductible**

**We** will pay when a covered loss exceeds the deductible shown on the Policy Declarations. **We** will then pay only the excess amount, unless **we** have indicated otherwise in this policy.

**2.  Insurable Interest And Our Liability**

In the event of a covered loss, **we** will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

**3.  What You Must Do After A Loss**

In the event of a loss to any property that may be covered by this policy, **you** must:

a)  promptly give **us** or **our** agent notice. Report any theft to the police as soon as possible. If the loss involves a credit card, charge plate or bank fund transfer card, give written notice to the company or bank that issued the card or plate.

b)  protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.

c)  separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.

d)  give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.

e)  produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.

f)  as often as **we** reasonably require:

1)  show **us** the damaged property.

2)  at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.

3)  produce representatives, employees, members of the insured's household or others to the extent it is within the **insured person's** power to do so; and

g)  within 60 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:

1)  the date, time, location and cause of loss;

2)  the interest **insured persons** and others have in the property, including any encumbrances;

3)  the actual cash value and amount of loss for each item damaged, destroyed or stolen;

4)  any other insurance that may cover the loss;

5)  any changes in title, use, occupancy or possession of the property that have occurred during the policy period;

6)  at **our** request, the specifications of any damaged **building structure** or other structure;

7)  evidence supporting any claim under the Credit Card, Bank Fund Transfer Card, Check Forgery and Counterfeit Money protection. State the cause and amount of loss.

**4.  Our Settlement Options**

In the event of a covered loss, **we** have the option to:

a)  repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or

b)  pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5., **How We Pay For A Loss**.

Within 30 days after **we** receive **your** signed, sworn proof of loss **we** will notify **you** of the option or options **we** intend to exercise.

**5.  How We Pay For A Loss**

Under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** and **Personal Property Protection–Coverage C**, payment for covered loss will be by one or more of the following methods:

a)  Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:

1)  the whole amount of loss for property covered under **Dwelling Protection–Coverage A and Other Structures Protection–Coverage B**, without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision, or;

2)  the whole amount of loss for property covered under **Personal Property Protection–Coverage C** without


You're in good hands.

deduction for depreciation, is less than $2,500 and if **your** Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b)   Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

**You** may make claim for additional payment as described in paragraph c) and paragraph d), if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

c)   Building Structure Reimbursement. Under **Dwelling Protection– Coverage A** and **Other Structures Protection–Coverage B**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value **if you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure(s)** damaged by a covered loss.

Building Structure Reimbursement will not exceed the smallest of the following amounts:
1)   the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same **residence** premises;
2)   the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar use on the same **residence premises**; or
3)   the limit of liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Dwelling Protection– Coverage A** or **Other Structures Protection–Coverage B**, regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structures Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:
1)   property covered under **Personal Property Protection– Coverage C**;
2)   property covered under **Other Structures Protection– Coverage B** that is not a **building structure**;
3)   wall-to-wall carpeting, fences, awnings and outdoor antennas whether or not fastened to a **building structure**; or
4)   land.

Payment under a), b), or c) above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of **building structures** or other structures except as provided under **Section I, Additional Protection** 10., Building Codes.

d)   Personal Property Reimbursement. Under **Personal Property Protection–Coverage C**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value **if you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:
1)   the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2)   the cost of repair or restoration; or
3)   the limit of liability shown on the Policy Declarations for **Personal Property Protection–Coverage C**, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:
1)   property insured under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B**, except wall-to-wall carpeting;
2)   antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;
3)   articles whose age or history contribute substantially to their value. This includes, but is not limited to memorabilia, souvenirs and collector's items; or
4)   property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss.

Deluxe Plus Homeowners Policy
Policy number:
Policy effective date:

6.  **Our Settlement Of Loss**
    **We** will settle any covered loss with **you** unless another payee is named in the policy. **We** will settle within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement between **you** and **us**, an appraisal award, or a court judgment.

7.  **Appraisal**
    If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

    The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us** the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

    Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

8.  **Abandoned Property**
    **We** are not obligated to accept any property or responsibility for any property abandoned by an **insured person**.

9.  **Permission Granted To You**
    a)  The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy for specific perils. A **building structure** under construction is not considered vacant.
    b)  **You** may make alterations, additions or repairs, and **you** may complete structures under construction.

10. **Our Rights To Recover Payment**
    When **we** pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

11. **Our Rights To Obtain Salvage**
    **We** have the option to take all or any part of the damaged or destroyed covered property upon replacement by **us** or payment of the agreed or appraised value.

    **We** will notify **you** of **our** intent to exercise this option within 30 days after **we** receive **your** signed, sworn proof of loss.

    When **we** settle any loss caused by theft or disappearance, **we** have the right to obtain all or part of any property which may be recovered. An

insured person must protect this right and inform **us** of any property recovered. **We** will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us**.

12. **Suit Against Us**
    No suit or action may be brought against **us** unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage.

13. **Loss To A Pair Or Set**
    If there is a covered loss to a pair or set, **we** may:
    a)  repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
    b)  pay the difference between the actual cash value of the pair or set before and after the loss.

14. **Glass Replacement**
    Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

15. **No Benefit To Bailee**
    This insurance will not benefit any person or organization who may be caring for or handling **your** property for a fee.

16. **Other Insurance**
    If both this insurance and other insurance apply to a loss, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

17. **Property Insurance Adjustment**
    When the Policy Declarations indicates that the Property Insurance Adjustment Condition applies:

    The limit of liability shown on the Policy Declarations for **Dwelling Protection–Coverage A** will be revised at each policy anniversary to reflect the rate of change in the Index identified on the Policy Declarations.

    The limit of liability for **Dwelling Protection–Coverage A** for the succeeding premium period will be determined by changing the existing limit in proportion to the change in the Index between the time the existing limit was established and the time the change is made. The resulting amount will be rounded to the nearest $1,000.

    Adjustment in the limit of liability for **Dwelling Protection–Coverage A** will result in an adjustment in the limit of liability for **Other Structures Protection–Coverage B** and **Personal Property Protection–Coverage C** in accordance with the **Allstate** manual of Rules and Rates.

    **We** will not reduce the limit of liability shown on the Policy Declarations without **your** consent.

    Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by **Allstate** at the time a change in limits is made.

Deluxe Plus Homeowners Policy
Policy number:
Policy effective date:

Page **14** of 19



**Allstate**
You're in good hands.

Allstate has the right to change to another cost index or to withdraw this condition as of a policy anniversary date by giving **you** at least 30 days notice. This applies only if the change or withdrawal applies to all similar policies issued by **Allstate** in **your** state.

18. **Mortgage**
A covered loss will be payable to the mortgagees named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

**We** will:
a)   protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, **an insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
b)   give the mortgage at least 10 days notice if **we** cancel this policy.

The mortgage will:
a)   furnish proof of loss within 60 days after notice of the loss if an **insured person** fails to do so;
b)   pay upon demand any premium due if an **insured person** fails to do so;
c)   notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgage has knowledge;
d)   give **us** the mortgagee's right of recovery against any party liable for loss; and
e)   after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

## Section II—Family Liability And Guest Medical Protection

### Family Liability Protection–Coverage X

**Losses We Cover Under Coverage X:**
Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted our limit of liability.

**Losses We Do Not Cover Under Coverage X:**
1.   **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
a)   such **insured person** lacks the mental capacity to govern his or her conduct;
b)   such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or
c)   such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2.   **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

3.   **We** do not cover **bodily injury** to any person eligible to receive benefits required to be provided or voluntarily provided by an **insured person** under any workers' compensation, non-occupational disability or occupational disease law.

4.   **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

5.   **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
a)   a motor vehicle in dead storage or used exclusively on an **insured premises**;
b)   any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
c)   a motorized wheel chair;
d)   a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
e)   a golf cart owned by an **insured person** when used for golfing purposes;
f)   a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
g)   lawn and garden implements under 40 horsepower;
h)   **bodily injury** to a **residence employee**.

6.   **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:

Deluxe Plus Homeowners Policy

Policy number:

Policy effective date:

a) has inboard or inboard-outboard motor power of more than 50 horsepower;

b) is a sailing vessel 26 feet or more in length;

c) is powered by one or more outboard motors with more than 25 total horsepower;

d) is designated as an airboat, air cushion, or similar type of watercraft; or

e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

This exclusion does not apply to **bodily injury** to a **residence employee**.

7. **We** do not cover **bodily injury** or **property damage** arising out of:
   a) the negligent supervision by an **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motor vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

   **We** do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9. **We** do not cover any **property damage** consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

10. **We** do not cover any **bodily injury** or **property damage** arising out of any liability statutorily imposed upon any **insured person** in any manner, consisting of or caused by vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

11. **We** do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person**.

12. **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**.

   **We** do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age.

13. **We** do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**.

14. **We** do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person**. This exclusion does not apply if the **property damage** is caused by fire, explosion or smoke.

15. **We** do not cover any liability an **insured person** assumes arising out of any contract or agreement.

16. **We** do not cover **bodily injury** or **property damage** caused by war or warlike acts, including, but not limited to insurrection, rebellion or revolution.

## Guest Medical Protection–Coverage Y

### Losses We Cover Under Coverage Y:

**Allstate** will pay the reasonable expenses incurred for necessary medical, surgical, x-ray and dental services; ambulance; hospital, licensed nursing and funeral services; and prosthetic devices, eyeglasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:

1. on the **insured premises** with the permission of an **insured person**; or

2. off the **insured premises**, if the **bodily injury**:
   a) arises out of a condition on the **insured premises** or immediately adjoining ways;
   b) is caused by the activities of an **insured person** or a **residence employee**;
   c) is caused by an animal owned by or in the care of an **insured person**; or
   d) is sustained by a **residence employee**.

### Losses We Do Not Cover Under Coverage Y:

1. **We** do not cover any **bodily injury** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**. This exclusion applies even if:
   a) such **insured person** lacks the mental capacity to govern his or her conduct;
   b) such **bodily injury** is of a different kind or degree than intended or reasonably expected; or
   c) such **bodily injury** is sustained by a different person than intended or reasonably expected.

   This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

2. **We** do not cover **bodily injury** to any **insured person** or regular resident of the **insured premises**. However, this exclusion does not apply to a **residence employee**.

3. **We** do not cover **bodily injury** to any person eligible to receive any benefits voluntarily provided, or required to be provided, under any workers' compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

Deluxe Plus Homeowners Policy
Policy number:
Policy effective date:

Page **16** of 19

**Allstate**
You're in good hands.

5.  **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. However, this exclusion does not apply to:
    a)  a motor vehicle in dead storage or used exclusively on an **insured premises**;
    b)  any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
    c)  a motorized wheelchair;
    d)  a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
    e)  a golf cart owned by an **insured person** when used for golfing purposes;
    f)  a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
    g)  lawn or garden implements under 40 horsepower;
    h)  **bodily injury** to a **residence employee**.

6.  **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
    a)  has inboard or inboard-outboard motor power of more than 50 horsepower;
    b)  is a sailing vessel 26 feet or more in length;
    c)  is powered by one or more outboard motors with more than 25 total horsepower;
    d)  is designated as an airboat, air cushion, or similar type of watercraft; or
    e)  is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

    This exclusion does not apply to **bodily injury** to a **residence employee**.

7.  We do not cover bodily injury arising out of:
    a)  the negligent supervision by any **insured person** of any person; or
    b)  any liability statutorily imposed on any **insured person**

    arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8.  **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials or other irritants, contaminants or pollutants.

    **We** do cover **bodily injury** which results from such discharge if the discharge is sudden and accidental.

9.  **We** do not cover **bodily injury** arising out of the rendering of, or failure to render professional services by, an **insured person**.

10. **We** do not cover **bodily injury** arising out of the past or present **business** activities of an **insured person**.

    **We** do cover the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age.

11. **We** do not cover **bodily injury** to any person on the **insured premises** because of a **business** activity or professional service conducted there.

12. **We** do not cover **bodily injury** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. This exclusion does not apply to **bodily injury** to a **residence employee**.

13. **We** do not cover **bodily injury** caused by war or warlike acts, including, but not limited to insurrection, rebellion, or revolution.

## Additional Protection

**We** will pay, in addition to the limits of liability:

1.  **Claim Expenses**
    **We** will pay:
    a)  all costs **we** incur in the settlement of any claim or the defense of any suit against an **insured person**;
    b)  interest accruing on damages awarded until such time as **we** have paid, formally offered, or deposited in court the amount for which **we** are liable under this policy; interest will be paid only on damages which do not exceed **our** limits of liability;
    c)  premiums on bonds required in any suit **we** defend; **we** will not pay bond premiums in an amount that is more than **our** limit of liability; **we** have no obligation to apply for or furnish bonds;
    d)  up to $250 per day for loss of wages and salary, when **we** ask **you** to attend trials and hearings;
    e)  any other reasonable expenses incurred by an **insured person** at **our** request.

2.  **Emergency First Aid**
    **We** will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an accident involving **bodily injury** covered under this policy.

3.  **Damage To Property Of Others**
    At **your** request, **we** will pay up to $1,000 each time an **insured person** causes **property damage** to someone else's property. At **our** option, **we** will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.
    **We** will not pay for **property damage**:
    a)  to property covered under **Section I** of this policy;
    b)  to property intentionally damaged by an **insured person** who has attained the age of 13;
    c)  to property owned by or rented to an **insured person**, any tenant of an **insured person**, or any resident in **your** household; or
    d)  arising out of:
        1)  past or present **business** activities:

Deluxe Plus Homeowners Policy

Policy number:

Policy effective date:

2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or

3) the ownership or use of a motorized land vehicle, trailer, aircraft or watercraft.

## Section II Conditions

1. **What You Must Do After An Accidental Loss**
   In the event of **bodily injury** or **property damage**, **you** must do the following:
   a) Promptly notify **us** or **our** agent stating:
      1) **your** name and policy number;
      2) the date, the place and the circumstances of the loss;
      3) the name and address of anyone who might have a claim against an **insured person**;
      4) the names and addresses of any witnesses.
   b) Promptly send **us** any legal papers relating to the accident.
   c) At **our** request, an **insured person** will:
      1) cooperate with **us** and assist **us** in any matter concerning a claim or suit;
      2) help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person**;
      3) attend any hearing or trial.
   d) Under the **Damage To Property Of Others** protection, give **us** a sworn statement of the loss. This must be made within 60 days after the date of loss. Also, an **insured person** must be prepared to show **us** any damaged property under that person's control.

   Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

2. **What An Injured Person Must Do—Guest Medical Protection—Coverage Y**
   If someone is injured, that person, or someone acting for that person, must do the following:
   a) Promptly give **us** written proof of the loss. If **we** request, this must be done under oath.
   b) Give **us** written authorization to obtain copies of all medical records and reports.
   c) Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

3. **Our Payment Of Loss—Guest Medical Protection—Coverage Y**
   **We** may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured person**.

4. **Our Limits Of Liability**
   Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, **our** total liability under **Family Liability Protection—Coverage X** for damages resulting from one **occurrence** will not exceed the limit shown on the Policy Declarations. All **bodily**

**injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence**.

**Our** total liability under **Guest Medical Protection—Coverage Y** for all medical expenses payable for **bodily injury**, to any one person, shall not exceed the "each person" limit shown on the Policy Declarations.

5. **Bankruptcy**
   **We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person**.

6. **Our Rights To Recover Payment—Family Liability Protection—Coverage X**
   When **we** pay any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them.

7. **Suit Against Us**
   a) No suit or action can be brought against **us** unless there has been full compliance with all the terms of this policy.
   b) No suit or action can be brought against **us** under **Family Liability Protection—Coverage X** until the obligation of an **insured person** to pay is finally determined either by judgment against the **insured person** after actual trial, or by written agreement of the **insured person**, injured person, and **us**.
   c) No one shall have any right to make **us** a party to a suit to determine the liability of an **insured person**.

8. **Other Insurance—Family Liability Protection—Coverage X**
   This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

## Section III—Optional Protection

## Optional Coverages You May Buy

The following Optional Coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1. **Increased Coverage On Business Property—Coverage BP**
   The $2,000 limitation on **business** property located on the **residence premises**, under **Personal Property Protection—Coverage C**, is increased to the amount shown on the Policy Declarations. This increased coverage includes property held as samples or for sale or delivery after sale, while the property is on the **residence premises**.

2. **Increased Coverage On Electronic Data Processing Equipment—Coverage DP**
   The $5,000 limitation on electronic data processing equipment under **Personal Property Protection—Coverage C**, and the recording or storage media used with that equipment, is increased to the amount shown on the Policy Declarations.

Deluxe Plus Homeowners Policy
Policy number:
Policy effective date:

**Allstate**
You're in good hands.

3. **Fire Department Charges–Coverage F**
The $500 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.

4. **Loss Assessments–Coverage G**
If **your residence premises** includes a **building structure** which is constructed in common with one or more similar buildings, and **you** are a member of, and subject to the rules of, an association governing the areas held in common by all building owners as members of the association, the **insured premises** means the **building structure** occupied exclusively by **your** household as a private residence, including the grounds, related structures and private approaches to them.

**We** will pay **your** share of any special assessments charged against all building owners by the association up to the limit of liability shown on the Policy Declarations, when the assessment is made as a result of:
a) sudden and accidental direct physical loss to the property held in common by all building owners caused by a loss **we** cover under **Section I** of this policy; or
b) **bodily injury** or **property damage** covered under **Section II** of this policy.

Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

**Allstate** will pay only when the assessment levied against the **insured person**, as a result of any one loss, for **bodily injury** or **property damage** exceeds $250 and then only for the amount of such excess. This coverage is not subject to any deductible applying to **Section I** of this policy.

In the event of an assessment, this coverage is subject to all the exclusions applicable to **Sections I** and **II** of this policy and the **Sections I** and **II Conditions**, except as otherwise noted.

This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

5. **Extended Coverage On Jewelry, Watches And Furs–Coverage J**
**Personal Property Protection–Coverage C** is extended to pay for sudden and accidental direct physical loss to the following property, subject to the provisions in this coverage:
a) jewelry, watches, gems, precious and semi-precious stones, gold, platinum; and
b) furs, including any item containing fur which represents its principal value.

The total amount of coverage and per item limit is shown on the Policy Declarations. This amount is not in addition to the amount of insurance applying to **Personal Property Protection–Coverage C**. However, in no event will coverage be less than would have applied in the absence of **Coverage J**.

**We** do not cover loss caused by or consisting of:
a) intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
   1) may be reasonably expected to result from such acts; or
   2) is the intended result of such acts.
b) wear and tear, gradual deterioration, inherent vice, insects or vermin.
c) nuclear action, meaning nuclear reaction, discharge, radiation or radioactive contamination or any consequence of any of these. Loss caused by nuclear action is not considered a loss by fire, explosion or smoke.

   **We** do cover sudden and accidental direct physical loss by fire resulting from nuclear action.

d) war or warlike acts, including, but not limited to insurrection, rebellion or revolution.
e) failure by any **insured person** to take all reasonable steps to preserve property during and after a loss or when the property is endangered by a cause of loss **we** cover.

Any deductible shown on the Policy Declarations applicable to **Personal Property Protection–Coverage C**, also applies to a loss under this coverage.

6. **Incidental Office, Private School Or Studio–Coverage K**
a) The $2,000 limit applying to property used or intended for use in a **business** under **Personal Property Protection–Coverage C** do not apply to equipment, supplies and furnishings used in a described office, private school or studio at **your residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

The **Coverage K** limits are shown on the Policy Declarations. The first limit applies to property on the **residence premises**. The second limit applies to property while away from the **residence premises**. These limits are not in addition to **Personal Property Protection–Coverage C**. **Limitations On Certain Personal Property** on property used or intended for use in a **business**. The increased coverage does not include property held for sample, sale or delivery after sale.

b) **Family Liability Protection–Coverage X** and **Guest Medical Protection–Coverage Y** are extended to cover a described office, private school or studio occupied by an **insured person**. The occupancy of the described property shall not be considered a **business**.

**We** do not cover **bodily injury** to:
a) any employee other than a **residence employee**; or
b) any person arising out of corporal punishment administered by or at the direction of an **insured person**.

Deluxe Plus Homeowners Policy
Policy number:
Policy effective date:

7.  **Increased Coverage On Money–Coverage M**
    The $200 limitation on money, bullion, banknotes, coins and other numismatic property under **Personal Property Protection–Coverage C** is increased to the amount shown on the Policy Declarations.

8.  **Business Pursuits–Coverage P**
    **Family Liability Protection–Coverage X** and **Guest Medical Protection–Coverage Y** are extended to cover specified **business** pursuits of an **insured person**.

    **We** do not cover:
    a)  **bodily injury** or **property damage** arising out of the business pursuits of an **insured person** when the **business** is owned or financially controlled by the **insured person**.

    This also means a partnership or joint venture of which an **insured person** is a partner or member:
    b)  **bodily injury** or **property damage** arising out of the rendering or failure to render a professional service of any nature, other than teaching;
    c)  **bodily injury** to a fellow employee of an **insured person** arising out of and in the course of employment;
    d)  **bodily injury** or **property damage** when an **insured person** is a member of a teaching staff or faculty of any school or college and the **bodily injury** or **property damage** arises out of the maintenance or use of saddle animals, vehicles used with saddle animals, motorized land vehicles, aircraft or watercraft when owned, hired or operated by an **insured person** or used for the purpose of instruction; or
    e)  **bodily injury** to any person arising out of corporal punishment administered by or at the direction of an **insured person** when an **insured person** is a member of the teaching staff or faculty of any school of instruction.

9.  **Increased Coverage On Securities–Coverage S**
    The $1,000 limitation on accounts, bills, deeds, evidences of debt, letters of credit, notes other than banknotes, passports, securities, tickets, or stamps, including philatelic property, covered under **Personal Property Protection–Coverage C**, is increased to the amount shown on the Policy Declarations.

10. **Satellite Dish Antennas–Coverage SD**
    **Personal Property Protection–Coverage C** is extended to pay for sudden and accidental direct physical loss to satellite dish antennas and their systems on **your residence premises**, subject to the provisions of **Personal Property Protection–Coverage C**.

    The amount of coverage is shown on the Policy Declarations.

11. **Portable Cellular Communication Systems–Coverage SE**
    **Personal Property Protection–Coverage C** is extended to portable cellular communication systems in or upon a motorized land vehicle or watercraft. This coverage applies only to portable systems that can be powered by electricity from a motorized land vehicle or watercraft.

Coverage applies whether or not the portable cellular communication system is used in a **business**.

The amount of coverage is shown on the Policy Declarations.

12. **Increased Coverage On Theft Of Silverware–Coverage ST**
    The $2,500 limitation on theft of silverware, pewterware and goldware under **Personal Property Protection–Coverage C** is increased to the amount shown on the Policy Declarations.

IN WITNESS WHEREOF, **Allstate** has caused this policy to be signed by its Secretary and its President at Northbrook, Illinois, and, if required by state law, this policy shall not be binding unless countersigned on the Policy Declarations by an authorized agent of **Allstate**.

*[signature]*

Secretary

*[signature]*

President,
Personal Property & Casualty

**EXHIBIT "B"**

# LAW OFFICES OF CHRISTOPHER G. HOOK

4264 Overland Avenue
Culver City, CA 90230
(310) 839-5179

September 24, 2019

Marc J. Feldman, Esq.
John F. Burns, Esq.
Sheppard, Mullin, Richter & Hampton LLP
501 W. Broadway, Fl. 19
San Diego, CA 92101-8541

**Sent via U.S. Mail and E-mail**

> Re:   *Baker vs. Allstate Insurance Co., et al., Case No. CV 19-08024-ODW(JCx)*
> Subject:   *Request for Confirmation of Rule 26(f) Conference on 9/26/2019*
> Our Clients:   *Alan Baker and Linda B. Oliver*

Dear Counsel:

On September 20, 2019, Mr. Burns e-mailed me to advise that your office was available for a telephonic Rule 26 conference on September 26th, 27th and October 1st. I responded immediately by e-mail requesting the discovery conference take place on September 26th. At the same time, I again requested your office provide dates of availability for the depositions of Allstate adjusters Edward Carrasco and Robert Romero.

It is now the close of business on September 24th and I have not received the courtesy of a response confirming our conference or dates of availability for the depositions. I propose we conduct our telephonic Rule 26(f) conference on September 26, 2019, at 10:30 a.m. Please call (641) 715-3580 and use access code 806234 to join the conference call. I will be waiting for you to join at which time I look forward to discussing:

> 1. The availability of Edward Carrasco and Robert Romero for deposition in the next two to three weeks (as you know these depositions were noticed for October 1st and 4th respectively). While a stipulation or court order is required to take depositions before the parties' initial meeting under Rule 26(f), there are no further restrictions under FRCP 30(a)(2)(A)(iii) that would justify any delay in the production of these witnesses;

> 2. The production of Allstate's entire claim file and all written communication for inspection and copying;

> 3. Scheduling of the depositions of my clients and the important principals from Mackey Construction;

1

4. Coordinating the deposition of John Petrov of Baldwin Construction and production of their business records.

I trust that if the date and time I proposed will not work for your office, you will immediately provide me with three alternate times on the 27th or October 1st for our Rule 26(f) conference.

Sincerely,

Christopher G. Hook, Esq.
LAW OFFICES OF CHRISTOPHER G. HOOK

CGH/lc

**EXHIBIT "C"**

# LAW OFFICES OF CHRISTOPHER G. HOOK

4264 Overland Avenue
Culver City, CA 90230
(310) 839-5179

October 30, 2019

Peter H. Klee, Esq.
Marc J. Feldman, Esq.
John F. Burns, Esq.
Sheppard, Mullin, Richter & Hampton LLP
501 W. Broadway, Fl. 19
San Diego, CA 92101-8541

**Sent via U.S. Mail and E-mail**

|  |  |
|---|---|
| Re: | *Baker vs. Allstate Insurance Co., et al., CV 19-08024-ODW(JCx)* |
| Subject: | *Amended Deposition Notices of Messrs. Romero and Carrasco* |
| Our Clients: | *Alan Baker and Linda B. Oliver* |

Dear Counsel:

Please allow this correspondence to serve as a response to yours of October 28th. While I disagree with your objection, on the basis that the November 1st date was a date specifically given to me by Mr. Feldman for Mr. Carrasco's deposition, after I previously noticed his deposition for October. Accordingly, your objection on my notice being three days late is not well-taken.

However, in the interest of working co-operatively to get discovery completed, I will agree to move Mr. Carrasco's deposition to November 15th, 2019. I will be taking Mr. Romero's deposition on the thirteenth as your office offered, however both depositions will take place at Veritext's office in downtown Los Angeles. If you have any objection to the enclosed amended notices, please so advise this week.

Sincerely,

Christopher G. Hook, Esq.
LAW OFFICES OF CHRISTOPHER G. HOOK

/Encl.

1

EXHIBIT "D"

1              UNITED STATES DISTRICT COURT

2              CENTRAL DISTRICT OF CALIFORNIA

3        _____

4    ALAN BAKER, ET AL.,

5              PLAINTIFFS,

6        V.                          CASE NO. 2:19-CV-08024

7    ALLSTATE INSURANCE CO., ET AL.,

8              DEFENDANTS.

9        _____

10

11              DEPOSITION OF ROBERT ROMERO

12                     VOLUME I

13

14   DATE:          WEDNESDAY NOVEMBER 13, 2019

15   TIME:          10:07 A.M.

16   LOCATION:      VERITEXT LEGAL SOLUTIONS

17                  707 WILSHIRE BOULEVARD, SUITE 3500

18                  LOS ANGELES, CA 90017

19

20

21

22   JOB NO.:       3618624

23   REPORTED BY:   LUCAS MAYEDA, NOTARY PUBLIC

24   PAGES:         1 - 186

25

[Filed / Lodged under Separate Cover]

Page 1

**EXHIBIT "E"**

1          UNITED STATES DISTRICT COURT

2          CENTRAL DISTRICT OF CALIFORNIA

3                              .

4    ALAN BAKER, ET AL.,        )
                                )
5              PLAINTIFFS,       )   CASE NO. 2:19-cv-08024
                                )
6    v.                         )
                                )
7    ALLSTATE INSURANCE CO.,    )
     ET AL.,                    )
8                               )
              DEFENDANTS.       )
9    _____)

10

11

12

13

14

15        VIDEO-RECORDED DEPOSITION OF EDWARD CARRASCO

16              FRIDAY, NOVEMBER 15, 2019

17                   VOLUME I

18

19

20        [Filed / Lodged under Seperate Cover]

21

22

23   JOB NO. 3618621

24   REPORTED BY MARY K. MEDLEY, CSR NO. 9557

25   PAGES 1-138

                                          Page 1

EXHIBIT "F"

## Christopher Hook

| | |
|---|---|
| **From:** | Christopher Hook |
| **Sent:** | Friday, November 15, 2019 5:34 PM |
| **To:** | Marc Feldman; Jack Burns |
| **Subject:** | Baker v. Allstate - Cont. of Depositions of R. Romero and E. Carrasco, Settlement Demand |

**CONFIDENTIAL SETTLEMENT COMMUNICATION PER EV. CODE 1152**

Marc:

I wanted to follow up with you regarding three things:

1. We need a date to continue the deposition of Robert Romero, who asked to conclude his deposition on Wednesday early because he was not feeling up to continuing. I have between three and four hours with him left.
2. We need a date to continue the deposition of Edward Carrasco, who stated he could not answer any more questions today, shortly before 3:00 p.m. on account of being to tired or exhausted, which I agreed to accommodate. I have about four hours left with Ed.

We will need one full day to complete each deposition. I am available November 22nd, 26th, December 5, 6, 9, 10, 19, 20. I want to complete them before the new year.

Alternatively, I am authorized to extend a policy limits demand for the limits of liability the Bakers paid for with the extended replacement endorsement on Allstate Policy 014 355 912, or 150% of $1,189,568.00 **($1,784,352.00)**, less amounts paid towards this limit to date on the claim.

The basis for this demand is that Allstate Insurance Company engaged in bad faith to deny my clients the benefit of what they paid for, either through the intentional acts of Messrs. Romero and Carrasco, their incompetence, or stupidity. I hope to determine the exact cause as we move forward with their depositions. They have already admitted to many *per se* violations of the CCR and Insurance Code and the whole file is replete with indisputable evidence of same. This case will be highly embarrassing to Allstate with massive tort exposure to these elderly customers, punitive damages and my attorneys fees which are expensive. I suspect if the Insurance Commission took an interest they would be shocked at the conduct on display and could decide to fine Allstate, which could occur if this matter became a public trial.

Why not save the money and exposure?

My demand includes a release of all parties and claims, and confidentiality, each party to bear their own costs and fees, release of unknowns, etc.. My demand will likely increase as this litigation takes more time and energy away from myself and my clients.

Please let me know about the depositions soon as I would like to complete those. Next I will be deposing Michelle Pham and John Petrov of Baldwin as well as Romero's supervisor.

Respectfully,
Chris

*Christopher G. Hook, Esq.*

**EXHIBIT "G"**

# LAW OFFICES OF CHRISTOPHER G. HOOK

4264 Overland Avenue
Culver City, CA 90230
(310) 839-5179

November 19, 2019

Peter H. Klee, Esq.
Marc J. Feldman, Esq.
John F. Burns, Esq.
Sheppard, Mullin, Richter & Hampton LLP
501 W. Broadway, Fl. 19
San Diego, CA 92101-8541

**Sent via U.S. Mail and E-mail**

|  |  |
|---|---|
| Re: | *Baker vs. Allstate Insurance Co., et al., CV 19-08024-ODW(JCx)* |
| Subject: | *Offer to Compromise for $50,000,000.00* |
| Our Clients: | *Alan Baker and Linda B. Oliver* |

Dear Counsel:

This letter shall serve as formal written notice to your client ALLSTATE INSURANCE
COMPANY that Plaintiffs will agree to file a dismissal with prejudice of their claims in the
above-referenced matter in exchange for payment in the amount of fifty million dollars
($50,000,000.00).

Respectfully,

Christopher G. Hook, Esq.
LAW OFFICES OF CHRISTOPHER G. HOOK

1

**EXHIBIT "H"**

# LAW OFFICES OF CHRISTOPHER G. HOOK

4264 Overland Avenue
Culver City, CA 90230
(310) 839-5179

November 20, 2019

Peter H. Klee, Esq.
Marc J. Feldman, Esq.
John F. Burns, Esq.
Sheppard, Mullin, Richter & Hampton LLP
501 W. Broadway, Fl. 19
San Diego, CA 92101-8541

**Sent via U.S. Mail and E-mail**

|  |  |
|---|---|
| Re: | *Baker vs. Allstate Insurance Co., et al., CV 19-08024-ODW(JCx)* |
| Subject: | *Offer to Compromise for $100,000,000.00* |
| Our Clients: | *Alan Baker and Linda B. Oliver* |

Dear Counsel:

This letter shall serve as formal written notice to your client ALLSTATE INSURANCE COMPANY that Plaintiffs will agree to file a dismissal with prejudice of their claims in the above-referenced matter in exchange for payment in the amount of one hundred million dollars ($100,000,000.00).

Wiring instructions are:

Account #: 127844690
Account Name: Law Offices of Christopher G Hook
Routing Number: 122016066
Swift Code: CINA US 6L
City National Bank, Beverly Hills

Please contact Mr. Jaymie Thomas at City National Bank if you have any questions regarding the wire.

Respectfully,

Christopher G. Hook, Esq.

1

EXHIBIT "I"

# LAW OFFICES OF CHRISTOPHER G. HOOK

4264 Overland Avenue
Culver City, CA 90230
(310) 839-5179

November 21, 2019, 5:00 p.m.

Peter H. Klee, Esq. *(pklee@sheppardmullin.com)*
Marc J. Feldman, Esq. *(mfeldman@sheppardmullin.com)*
Jack F. Burns, Esq. *(jburns@sheppardmullin.com)*
Sheppard, Mullin, Richter & Hampton LLP
501 W. Broadway, Fl. 19
San Diego, CA 92101-8541

**Sent E-mail and Facsimile**

| | |
|---|---|
| Re: | *Baker vs. Allstate Insurance Co., et al., CV 19-08024-ODW(JCx)* |
| Subject: | *Offer to Compromise for $125,000,000.00* |
| Our Clients: | *Alan Baker and Linda B. Oliver* |

Dear Counsel:

This letter shall serve as formal written notice to your client ALLSTATE INSURANCE
COMPANY that Plaintiffs will agree to file a dismissal with prejudice of their claims in the
above-referenced matter in exchange for payment in the amount of one hundred and twenty
five million dollars ($125,000,000.00).

Wiring instructions are:
Account #: 127844690
Account Name: Law Offices of Christopher G Hook
Routing Number: 122016066
Swift Code: CINA US 6L

## A. Case Analysis and Basis for Settlement Estimate

This case has exploded and become a grenade of existential caliber to Allstate's ability to write
property & casualty policies in California. Ed Carrasco's deposition revealed that he is an
extremely low IQ individual, without a college education, and without any training in
insurance adjustment. He was not even given a training manual to guide him during the
complex process of evaluating and adjusting the Bakers' claim. What a disaster and fraud.
Worst of all, you guys agree to take money in exchange for enabling this type of corporate
behavior.

1

The details of the deposition you know, and are too humiliating and disgraceful to even discuss. Mr. Carrasco almost had a nervous breakdown, and that was even before we began discussing the claim. Frankly, I am concerned that he is of such low intelligence that he would not be competent to take the stand in court.

In any event this case illustrates a nefarious scheme by the "good hands" company to intentionally hire stupid, incompetent trolls to adjust insurance claims, then set them up for failure by providing them with no training, supervision, or even a manual. It's an utter disgrace.

What makes this case even more embarrassing, is that instead of settling the matter promptly, your firm engaged in a bad-faith litigation tactic to further delay settlement of the claim. This is called doubling down and a very, very bad hand. This ██████ tactic backfired, and ██████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████

████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

Since the disaster that was Mr. Carrasco's *initial* deposition session, I have attempted to be very reasonable, first offering to settle for policy limits of 1.7 million. I got no response. After considering Allstate's 100% exposure to punitive damages in this case, I retracted my demand and asserted a new demand of $20 million. Doing any less would have been below the standard of care.

That was on Saturday, and since that time I have heard nothing from your office. Silence. No counteroffer, nothing. I told you my clients are old, they don't care about the money, they just want to settle this case, and I just want to perform to the standard of care.

I have called your office multiple, multiple times this week, to each one of you. I have done so in the spirit of professionalism to try and work out a swift settlement. Against, my clients don't really care about the money and neither do I. We don't want Allstate's blood money. I was ready to make a quick deal. You have stonewalled me and not even done the courtesy of calling me back to discuss this important case.

████████████████████████████████████████████ I want my clients' money and I want it now. Your client is a criminal enterprise, and so is your law firm as far as I am concerned for enabling and obfuscating this disgraceful treatment of the California consumer. ████████████████████████████

2

Since bargaining against myself would be malpractice, and because Allstate has extended no settlement offer of any kind, I have been forced to make an every increasing punitive damage demand, to correspond to my estimate of Allstate's exposure to punitive damages, due to the venue, facts, judge, immediacy of availability of summary judgment, and their ongoing fraud against California consumers, in an amount that is unknown to me but certainly continuing. Also unknown to me at this time is Allstate's history of being hit with punitive damages, and the scope of their financial resources.

██████████████████████████████████ I just want to perform to the standard of care and get my clients the full value of the claim, which is an amount that is difficult to determine. To assist in this analysis, I have proposed:

- A private settlement conference with a Federal Judge;
- A binding arbitration before a 3-judge panel as to punitive damages
- A settlement discussion with the Hon. Lawrence Burns
- Various settlement values and ranges
- Having Allstate calculate the range of values of exposure to punitive damages they would have before Judge Wright
- Have Ed Carrasco calculate same.

No response. No counter-proposals from the insurance attorney experts.

You guys don't call or email. No offer to my clients. You think you can just ignore me and my clients and act with fucking impunity. That is not going to happen. ████████, not on my watch.

I'm coming down to San Diego and I will get my clients money from you guys personally if necessary. No more corporate lies, bullshit, ████████ scamming of the elderly.

*When I use my strength in the service of my vision it makes no difference whether or not I am afraid. –*
*Audre Lorde*

Sincerely,

Christopher G. Hook, Esq.

Cc: Mr. Donald Barr, Esq. (by facsimile only)

3