SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
PETER H. KLEE, Cal. Bar No. 111707
MARC J. FELDMAN, Cal. Bar No. 144830
JACK F. BURNS, Cal. Bar. No. 290523
501 West Broadway, 19th Floor
San Diego, California 92101-3598
Telephone:  619.338.6500
Facsimile:   619.234.3815
E mail         pklee@sheppardmullin.com
                   mfeldman@sheppardmullin.com
                   jburns@sheppardmullin.com

Attorneys for Allstate Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN BAKER,<br>LINDA B. OLIVER,<br><br>          Plaintiffs,<br><br>     v.<br><br>ALLSTATE INSURANCE COMPANY,<br>EDWARD CARRASCO, and DOES 1 through 10, inclusive,<br><br>          Defendants. | Case No. 2:19-cv-08024-ODW-JC<br><br>**REPLY MEMORANDUM IN SUPPORT OF ALLSTATE'S EX PARTE APPLICATION**<br><br>Hon. Otis D. Wright II<br><br>Date:    December 16, 2019<br>Time:   1:30 p.m.<br>Dept:   First Street Courthouse,<br>             Courtroom 5D<br><br>[Complaint Filed: August 13, 2019]<br>Trial Date:           None set |

## I. INTRODUCTION

Mr. Hook's conduct is so far beyond the pale that there is no excuse for it and no going back from it. Mr. Hook's attempt to dismiss his numerous abusive emails and discriminatory slurs as mere "harsh language" and "puffery" is offensive. Even worse, his demonstrably false denial that he made repeated direct threats of physical violence proves that Mr. Hook cannot be trusted to have contact with Allstate's witnesses or counsel and that Allstate's application should be granted.

Plaintiffs' purported legal defenses for Mr. Hook's abusive conduct have no merit either. Mr. Hook's threats are not hearsay. They are not protected by California Civil Code Section 47(b) or California's Anti-SLAPP law because these statutes merely bar causes of action based on protected speech; they do not prevent a court from dismissing a pending lawsuit or disqualifying an attorney for misconduct. And Mr. Hook's threats are not protected speech anyway. Nor are Mr. Hook's abusive emails and threats privileged settlement communications. The most egregious missives did not even mention settlement. In any event, California Evidence Code Section 1152 and Federal Rule of Evidence 408 merely prevent offers of settlement to be used to prove a party's liability for the claim at issue in the lawsuit. Allstate is not offering Mr. Hook's communications for that purpose.

More importantly, by contending that he had a right to act as he did, and by having the temerity to seek sanctions against Allstate for seeking relief based on his abuse, Mr. Hook has demonstrated that he has no remorse. To the contrary, he has ratified his own misconduct and shown it is likely to continue. And by authorizing Mr. Hook to file the opposition on their behalf, not just for himself, Plaintiffs also have ratified his misconduct. This provides an additional basis for dismissal.

Therefore, Allstate requests that the Court: (1) maintain the suspension of all scheduled depositions, as set forth in its December 2 Order; (2) proceed with the Order to Show Cause hearing set for December 16; and (3) at the hearing, grant the relief requested by Allstate.

## II. MR. HOOK'S ABUSIVE AND THREATENING CONDUCT

Because there is no justification for Mr. Hook's conduct, Plaintiffs' opposition tries to shift the focus by attempting to argue that they have a "really good case" against Allstate. Having the best case in the world would not justify Mr. Hook's behavior, but the pending ex parte application is not the forum to litigate the merits of this case. Nevertheless, two points are worth noting because they are undisputed.

First, despite Mr. Hook's purported settlement demands for hundreds of millions of dollars, plaintiffs do not dispute that the actual amount at issue is about $200,000. (Complaint ¶ 33)

Second, despite the rhetoric about Allstate's removal of this case to federal court, plaintiffs expressly consented to federal jurisdiction. Dkt. 17.

## III. MR. HOOK DID MUCH WORSE THAN USE "BLUSTER"; HE HURLED EPITHETS AND REPEATEDLY THREATENED VIOLENCE

Mr. Hook tries to minimize his abusive behavior by referring to it as "bluster" and "puffery." But it went far, far beyond that; it included not only repeated vulgarity and profanity, but also discriminatory epithets:

- "What is Wright going to do when he finds out Allstate is using people who are borderline retarded to adjust complex claims. That's what I'm going to do. Demand increases tomorrow." (Dkt. 22-1, p. 11)
- "Anytime now faggot." (*Id.*, p. 13)
- "I want my clients' money gay boys." (*Id.*, p. 14)
- "306 million gay boys." (*Id.*, p. 15)

Mr. Hook also claims that he "apologized to defense counsel and the Court." (Hook Decl., Dkt. 26-1, ¶ 23). He did not and provides no document showing that he did.

Even worse, Mr. Hook also asserts: "At no time did the undersigned threaten or intend to threaten defense counsel, their co-workers or families with harm." (*Id.*) That is patently false. In emails, which he does not deny sending, Mr. Hook specifically threatened:

- "Tell Allstate I am going to water board each one of their trolls that show up for depo without any mercy whatsoever." (Dkt. 22-1, p. 18)
- "Don't make me come down there and beat out of you f--king thief." (*Id.*, p. 19)
- "You are going to get f--king tattooed across the face Klee." (*Id.*, p. 20)
- "I'm going bat shit crazy on you mother f--king c--k suckers." (*Id.*, p. 21)
- "Well karma is a bitch mother f--ker. You are going to learn that in spades. I know where you live pete [and then listing town where Mr. Klee lives and the name of his wife]. " (*Id.*, pp. 22, 23)

The fact that Mr. Hook refuses to acknowledge these threats of violence – and falsely asserts that he did not make any – simply confirms that he cannot be trusted to refrain from this behavior in the future. Allstate's witnesses and attorneys remain at risk.

## IV. ALLSTATE RESPONDED TO MR HOOK, UNTIL HIS BEHAVIOR MERITED NO RESPONSE

In another attempt to deflect from his own inexcusable conduct, Mr. Hook complains that Allstate did not respond to his ever-escalating settlement demands. As an initial matter, even if Allstate had completely ignored Mr. Hook, that would not excuse his abuse and threats. But Mr. Hook's assertions are also false.

Mr. Hook's abusive conduct began on November 21. (Notably, his declaration does not attach a single piece of correspondence after that date.) Before

Mr. Hook became threatening and abusive, and even after, Allstate's counsel repeatedly responded to Hook:

- Over the course of a weekend, Mr. Hook's demands escalated from $1.7 million to over $100 million. But on November 20, Mr. Hook made a reference to seeking the "policy limits." That day, Mr. Feldman responded to this seemingly more reasonable overture by stating:
    - "Your escalating settlement demands and threats (now at $100+ million for a $220,000 dispute) are counter-productive toward resolving this case . . . In contrast to your emails, you appear to have left a more reasonable sounding voicemail suggesting that your clients were genuinely interested in settlement. If you have a proposal that realistically reflects the amount in dispute, please let me know." (Dkt. 22-1, p. 11)
- On November 21, Mr. Hook replied: "Allstate can settle this claim now for stated estimate or claim can be adjusted by the Honorable Judge Otis Wright next week. Send file to Ed Carrasco for evaluation to double check SMRH work." (Declaration of Marc J. Feldman, Ex. 1, p. 4)
- Although the tone of this email was inappropriate, Mr. Feldman nonetheless sought clarification:
    - "Chris, Your email below is unclear. Are your clients offering to settle for the amount of Mackey Construction's estimate of $394,731, less Allstate's prior dwelling payments? Please clarify so I can relay to my client." (*Id.*)
- Later on November 21, Mr. Hook sent an email stating: "Attention criminal enterprise" and attached a letter with offensive and abusive language. (Dkt. 22-1, p. 6)

- At that point, Mr. Feldman explained that Allstate would not respond further to absurd demands or abusive communications:
    - "Chris, As I have previously stated, your ever-increasing 9-figure demands (the latest being $125 million) in a case involving a $200,000 dispute are counterproductive. Therefore, in-person settlement discussions would not be productive either, and you don't need to come to San Diego. The tone and content of your attached letter do not merit a further response." (Dkt. 22-1, pp. 5-6)
- Nevertheless, and contrary to Mr. Hook's assertion that Allstate is trying to delay depositions, that day Mr. Feldman also offered dates for the depositions of three Allstate witnesses to begin December 11. (Declaration of Marc J. Feldman, Ex. 1, p. 5)
- Mr. Hook then appeared to retreat toward reasonableness by asking: "Counsel, what would be an appropriate settlement figure in your estimate?" (Dkt. 22-1, p. 5)
- Mr. Feldman responded: "Given that the amount in dispute is about $200,000, a reasonable range in which to discuss settlement would be between $0 and $200,000." (*Id.*)
- Mr. Hook replied: "Haha. F--k you crooks. Eat a bowl of dicks." The abuse and threats escalated from there. (*Id.*)

In sum, Allstate responded up to – and even slightly after – Mr. Hook's conduct became offensive and abusive. It warned Mr. Hook that it would not respond to threats or abuse. Allstate was not required to "meet and confer" further after Mr. Hook unleased epithets and threats of violence. By attempting to blame Allstate and its counsel for his own inexcusable conduct Mr. Hook simply shows that he has no remorse.

## V. MR. HOOK'S CONDUCT NECESSITATED AN EX PARTE APPLICATION

Mr. Hook's assertion that Allstate somehow violated professional rules by bringing its application ex parte is both meritless and hypocritical.

First, this is exactly the type of emergency for which an ex parte application is warranted. Mr. Hook repeatedly threatened physical violence, including to "water board" witnesses at deposition and to "tattoo" counsel across the face – adding "I know where you live," and proving it by listing counsel's hometown. As Allstate explained in its moving papers (and Mr. Hook acknowledges), depositions were scheduled for the week of December 9; thus, there was no time to bring a noticed motion to prevent Mr. Hook from being in physical proximity with the very people whom he threatened to assault. (Klee Decl., ¶ 5) Mr. Hook simply ignores this.

Second, ex parte applications are governed by Local Rule 7-19, not Rule 7-3. Allstate fully complied with Rule 7-19, as well as this Court's Chambers' rules. And as Allstate explained in its moving papers, given the nature of Mr. Hook's express threats of physical violence, this is a situation where good cause existed for not including a "statement of opposing counsel's position." Mr. Hook made his position obvious.

Third, Allstate filed its application as soon as possible, the Tuesday after the weekend when Mr. Hook threatened Allstate's counsel and family. But Mr. Hook did not respond within 24 hours, as required. In fact, for over a week, he did nothing. He did not even notify the Court that he intended to oppose Allstate's application. Only *after* the Court issued its Order to Show Cause did Mr. Hook file anything. Substantive misconduct aside, it is Mr. Hook, not Allstate, who violated all the procedural rules.

## VI. PLAINTIFFS' EVIDENTIARY OBJECTIONS ARE MERITLESS

Plaintiffs assert that Mr. Hook's own emails are not "properly authenticated." That is absurd.

<u>First</u>, Plaintiffs cite Federal Rule of Civil Procedure 56. But that has no application here; this is not a summary judgment motion. <u>Second</u>, and in any event, all of the emails were properly authenticated by Peter Klee, who has personal knowledge because he received them. Fed. R. Evid. 602, 901. <u>Third</u>, Mr. Hook does not – because he cannot – dispute that he sent all of the emails in question. In fact, he admits sending them and simply tries to whitewash them with descriptions such as "bluster" and "puffery."

Mr. Hook's statements are also not hearsay. Allstate is not offering the epithets and threats for the truth of the matter asserted, but to show that they were made. Fed. R. Evid. 801(c)(2); *see also People v. Castro*, 99 Cal. App. 3d 191, 200 n.6 (1979) ("The testimony of Ramey and the police officers concerning various threats against Ramey's life was not admitted for the truth of the matter stated, but only to show that threats had been made. The testimony was not hearsay."). And even if offered for the truth of the matter asserted, Mr. Hook's statements are not hearsay because they were made by a "party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D).

## VII. **MR. HOOK'S MISCONDUCT IS NOT PROTECTED BY CIVIL CODE SECTION 47 OR THE ANTI-SLAPP STATUTE**

Plaintiffs wrongly contend that Mr. Hook's conduct is protected by the "litigation privilege" set forth in California Civil Code Section 47(b). It isn't at all.

Section 47(b) "bars certain *tort causes of actions* predicated on a judicial statement or publication." *Stacy & Witbeck, Inc. v. City & Cty. of San Francisco*, 36 Cal. App. 4th 1074, 1091 (1995) (italics added). But while Section 47 prevents a party from bringing an independent suit or causes of action arising from certain litigation conduct, it does ***not*** prevent the Court from addressing that conduct in the pending lawsuit. To the contrary, the policy behind Section 47 is to "***favor[] sanctions within the original lawsuit***" over "derivative tort claims arising out of litigation-related misconduct." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1063 (2006)

(emphasis added).  Allstate is not suing Mr. Hook over his misconduct.  Allstate simply seeks relief and protection from that conduct within the confines of this lawsuit.  Section 47(b) does not bar this; it "favor[s]" the relief sought by Allstate.

Similarly, Mr. Hook's misconduct is not protected by California's Anti-SLAPP statute, California Code of Civil Procedure Section 425.16.  Like Civil Code Section 47, the Anti-SLAPP statute "*applies only when a cause of action* arises from protected activity."  *Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1024 (N.D. Cal. 2018) (emphasis added; quotation marks omitted); Cal. Code Civ. Proc. §425.16 (referring to "lawsuits" and a "cause of action"); *Marlin v. Aimco Venezia, LLC*, 154 Cal. App. 4th 154, 162 (2007) (holding SLAPP statute did not even apply to request for an injunction because it was "not a cause of action").  Once again, Allstate has not pursued a lawsuit or "cause of action" against Mr. Hook or the plaintiffs.  Allstate merely requests that the Court exercise its inherent power within this lawsuit that plaintiffs have brought against Allstate.

Moreover, Mr. Hook's intimidation and threats are not "protected activity" anyway.  *See, e.g., Virginia v. Black*, 538 U.S. 343, 359-60 (2003) ("true threats" and "intimidation" not protected by the First Amendment); *Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 143 Cal. App. 4th 1284, 1290, 1301 (2006) (affirming denial of Anti-SLAPP motion because threats, including "we know where you live" were "not protected activities"); *In re Itel Sec. Litig.*, 791 F.2d 672, 676 (9th Cir. 1986) (rejecting First Amendment challenge to sanctions award because "[t]he power of the federal courts to sanction attorney misconduct, be it frivolous litigation or contemptuous behavior, is beyond doubt.").

In short, there is no statutory protection for Mr. Hook's misconduct.

## VIII. MR. HOOK'S ABUSE AND THREATS ARE NOT PROTECTED SETTLEMENT COMMUNICATIONS EITHER

Mr. Hook's misconduct and threats are also not protected "settlement communications."

First, the most egregious of Mr. Hook's epithets and threats did not even mention settlement.  Just some examples are:

- "Anytime now faggot."  (Dkt. 22-1, p. 13)
- "Tell Allstate I am going to water board each one of their trolls that show up for depo without any mercy whatsoever."  (*Id.*, p. 18)
- "Don't make me come down there and beat out of you f--king thief."  (*Id.*, p. 19)
- "You are going to get f--king tattooed across the face Klee."  (*Id.*, p. 20)
- I know where you live pete."  (*Id.*, p. 22)

Second, the fact that other communications contained (absurdly inflated) settlement demands does not immunize them.  California Evidence Code Section 1152 simply provides that offers of compromise are inadmissible to "prove [the offeror's] liability for the loss or damage."  It therefore only serves to "prohibit[ ] the introduction into evidence of an offer to compromise a claim *for the purpose of proving liability for that claim*."  *Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 396 (1970) (emphasis added).  Likewise, Federal Rule of Evidence 408 only prohibits introduction of settlement communications "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."

Here, however, Allstate has not used the e-mails to prove or disprove liability for any claim at issue in this case.  Allstate introduces the e-mails to display Mr. Hook's reprehensible conduct and demonstrate why the Court must intervene.  Section 1152 and Rule 408 do not shield Mr. Hook or his clients from the consequences of that conduct.

## IX. PLAINTIFF'S ARE NOW COMPLICIT IN MR. HOOK'S CONDUCT

Finally, Plaintiffs' opposition is telling for what it does not say.  Plaintiffs do not dispute that this Court has the authority to grant the relief that Allstate seeks – to

dismiss the case, disqualify Mr. Hook, issue a TRO, and award sanctions – based on Mr. Hook's egregious misconduct. *Halsco Engineering Co. v. Castle*, 843 F.2d 376, 380 (9th Cir. 1988) ("Dismissal under a court's inherent powers is justified in extreme circumstances in response to abusive litigation practices"); *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996) ("District judges have an arsenal of sanctions they can impose for unethical behavior.  These sanctions include monetary sanctions, contempt, and the disqualification of counsel.").

And while plaintiffs generally may not escape dismissal by claiming that they are unaware of their attorney's misconduct, *West Coast Theater Corp. v. City of Portland*, 897 F.2d 1519, 1523 (9th Cir. 1990), this case has now gone beyond that. Even if Plaintiffs were unaware of Mr. Hook's conduct when it happened, they are aware now.  The opposition was filed *on behalf of Plaintiffs*; Mr. Hook did not file it in his own name.  Thus, by authorizing the opposition – which abortively attempts to justify rather than apologize for Mr. Hook's misconduct – Plaintiffs have ratified Mr. Hook's actions.  This makes dismissal even more appropriate.

## X.    CONCLUSION

Mr. Hook's conduct is egregious and inexcusable.  He has shown no contrition and has even falsely denied that the worst of it occurred.  The Court should issue an order: (1) dismissing this action, (2) disqualifying Mr. Hook as Plaintiffs' counsel, (3) restraining Mr. Hook from communicating with or approaching Allstate or its attorneys, (4) preventing any depositions noticed by Plaintiffs from proceeding, and (5) awarding sanctions.

Dated:  December 5, 2019

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      *s/ Marc J. Feldman*
MARC J. FELDMAN
Attorneys for Allstate Insurance Company