1   SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
    PETER H. KLEE, Cal. Bar No. 111707
3   MARC J. FELDMAN, Cal. Bar No. 144830
    JACK BURNS, Cal. Bar No. 290523
4   501 West Broadway, 19th Floor
    San Diego, California 92101-3598
5   Telephone:   619.338.6500
    Facsimile:   619.234.3815
6   E mail       pklee@sheppardmullin.com
                 mfeldman@sheppardmullin.com
7
    Attorneys for Defendants
8   ALLSTATE INSURANCE COMPANY

9

10                  UNITED STATE DISTRICT COURT

11                CENTRAL DISTRICT OF CALIFORNIA

12

| | |
|---|---|
| 13  ALAN BAKER,<br>      LINDA B. OLIVER, | Case No. 2:19-cv-08024-ODW-JC |
| 14 | **REPLY IN SUPPORT OF** |
|              Plaintiffs, | **ALLSTATE'S MEMORANDUM OF** |
| 15 | **COSTS AND FEES** |
|          v. | |
| 16 | |
|    ALLSTATE INSURANCE | Hon. Otis D. Wright II |
| 17  COMPANY, EDWARD CARRASCO, | |
|    and DOES 1 through 10, inclusive, | Dept:      First Street Courthouse, |
| 18 | Courtroom 5D |
|          Defendants. | |
| 19 | Complaint Filed: August 16, 2018 |
|  | Trial Date:  Not yet set. |

20

21

22

23

24

25

26

27

28

## I.    Introduction

From reading Christopher Hook's response to Allstate's memorandum of costs, one might think that, as soon as Allstate filed its ex parte application, Hook immediately withdrew as counsel, agreed to halt all depositions, and apologized to Allstate's lawyers for his slurs and threats of physical violence. But nothing could be further from the truth. Far from withdrawing, Hook opposed the application and fought tooth and nail to stay in this case. Far from agreeing with Allstate's request to put a hold on depositions, Hook asked the Court to order Allstate to proceed with previously-noticed depositions. And far from apologizing, Hook contended that his misconduct was Allstate's fault, and he requested sanctions against Allstate for having the temerity to complain.

As a result, Allstate had no choice but to file the reply brief that Hook now claims was "unnecessary." Far from being moot, the reply brief was Allstate's only opportunity to respond to the multiple meritless arguments Hook raised in his opposition brief. And although Hook disingenuously suggests that he was already removed from the case, in fact, he was fired *after* Allstate filed its reply.

Setting aside Hook's revisionist history, it is clear that the time spent making sure that he ceased his misconduct and stayed away from Allstate's employees, lawyers, and their families was both necessary and appropriate. Indeed, the content of Hook's emails made clear that the relief Allstate sought – and which Hook opposed – was critically important. None of the requested relief was moot until Hook's clients fired him just a few days before the hearing.

When he appeared in Court, even Hook agreed that he should pay Allstate for the time it had expended through the date of the hearing. But now, instead of owning up to what he has done, Hook again attempts to minimize the severity of his misconduct, shift blame to Allstate, and disingenuously characterize what Allstate's counsel needed to do to in response to his actions. If anything, Hook's most recent brief proves that he *still* does not grasp the gravity of what he has done and the

1  damage it caused.  The Court should order Hook to compensate for the full $41,748

2  that his misconduct forced Allstate to incur.

3  **II.     Background**

4       A timeline of the events that led to Allstate's filing of its bill of costs refutes

5  Hook's new arguments.

6       In late November 2019, Hook began his campaign of misconduct that started

7  with profanity-laced emails, escalated to slurs, and culminated in repeated threats of

8  physical violence.  *See* Dkt. No. 22-1.  Because depositions were scheduled for early

9  December, there was no time to bring a noticed motion to prevent Hook from being

10 in a deposition room with the people he had threatened.  *See* Dkt. No. 22, ¶ 5.

11 Allstate therefore filed an ex parte application as soon as possible seeking:  (1)

12 dismissal of the case; (2) disqualification of Hook; (3) a Temporary Restraining

13 Order against Hook; (4) a protective order regarding the pending depositions; and

14 (5) sanctions.  Dkt. No. 21.

15      The next week, the Court issued an order noting that Hook had not responded

16 to the application.  Dkt. No. 25.  The order suspended all depositions and ordered

17 the parties (including the plaintiffs in this case, Mr. Baker and Ms. Oliver) to appear

18 for a hearing on December 16.  *Id.*

19      The next day, Hook filed an opposition brief (purportedly on behalf of his

20 clients) where he:  (1) argued that his conduct was "no basis" for disqualifying him

21 as plaintiffs' "counsel of choice," Dkt. No. 26 at 5; (2) asked the Court to order

22 Allstate to proceed with previously-noticed depositions, *id*. at 2, 9; and (3)

23 vigorously defended his conduct as "privileged" settlement negotiations, hearsay,

24 unauthenticated, puffery, and protected by the First Amendment and California's

25 Anti-SLAPP statute, *id*. at 7-9.  Hook showed no compunction for what he had

26 done.  To the contrary, he argued that Allstate was actually at fault for his conduct

27 because "defense counsel caused or contributed to the alleged situation by refusing

28 to communicate with Plaintiffs' counsel."  *Id*. at 7.  Hook sought sanctions against

1    Allstate for having brought its request for relief.  *Id.* at 1-2.

2         In light of the potentially serious consequences that would follow if the Court

3    were to grant Hook's request that the case proceed uninterrupted with him as

4    counsel, Allstate promptly researched Hook's legal arguments, and filed a reply

5    brief addressing each of them.  Dkt. No. 27.

6         About a week after Allstate filed its reply, and just a few days before the

7    hearing on Allstate's application, plaintiffs fired Hook.  Dkt. No. 31.  Plaintiffs

8    revealed that Hook filed his opposition without informing them of his actions,

9    Allstate's application, or the Court's order that they appear at the hearing.  *Id.*  Hook

10   then went on the Adam Carolla Show, where he continued to trivialize his

11   misconduct and criticize Allstate.  The Adam Carolla Show, Dec. 14, 2019,

12   https://www.youtube.com/watch?v= 3PxUEacrCSQ.  When a host of the show

13   suggested that some of his emails included threats, Hook said that was "bulls---."

14   *Id.* at 5:35-50.  And he bragged that "there is a limit to what the court can do to me,

15   and what the bar can do to me."  *Id.* at 7:07-18.

16        At the December 16 hearing, the Court recognized the extraordinary severity

17   of what Hook had done.  Hook had "brought shame to the profession."  Dkt. No. 44

18   at 5.  The Court had "never seen anything like" Hook's conduct.  *Id.* at 8.  The Court

19   also acknowledged that the relief Allstate sought was warranted.  If plaintiffs had

20   condoned Hook's conduct "this case was going to be history."  *Id.* at 6.  The Court

21   was "terribly concerned" about the depositions Hook had pushed to reinstate, and

22   "could imagine how those depositions would have proceeded."  *Id.* at 6-7.  Because

23   plaintiffs had fired Hook a few days earlier, however, the Court stated that the

24   request to disqualify him as counsel had been mooted, as had the stay on

25   depositions.  *Id.*  Likewise, while the Court acknowledged the concerns about

26   keeping Hook away from Allstate's employees, lawyers, and their families, that too

27   was mooted when he was fired.  *Id.* at 7-8.

28        On the issue of monetary sanctions, Hook admitted that he owed Allstate for

-4-

1    its costs and fees through the date of the hearing.  *Id*. at 16.  The Court asked Hook

2    "tell me why you aren't responsible for the cost and fees incurred in preparing the

3    ex parte application and appearing here."  *Id.*  In stark contrast to what he says now,

4    Hook told the Court "I'll pay them.  I'll submit.  I'll pay."  *Id.*

5    **III.**    **Allstate's ex parte application was not "moot" or "unnecessary"**

6           Hook now attempts to rewrite this history.  Dkt. No. 46.  After describing his

7    conduct as merely "uncivil," he asserts that "Allstate's response to the situation was

8    also unnecessary."  *Id.* at 1.  "Despite Hook's contrition," the response explains,

9    "Allstate elected to file an application that was largely moot, save for a request for

10    sanctions based on its filing."  *Id.*  The written record in this case demonstrates that

11    no part of that is true.  Nothing was moot until plaintiffs fired Hook.  Dkt. No. 44 at

12    6-8.  That happened weeks after Allstate filed its application, and several days after

13    Allstate filed its response to Hook's opposition.  Dkt. Nos. 21, 26, 27, 31.  In other

14    words, Allstate's response was absolutely necessary, and no less would be tolerable

15    in light of Hook's threats of physical violence to innocent employees, attorneys and

16    family members.

17    **IV.**    **Hook's meet and confer argument is absurd**

18           Once Hook made his threats, there was no proceeding in this case with him as

19    counsel.  Under Local Rules 7-19.2, there was also no need for Allstate to schedule

20    a meet and confer to obtain Hook's position on his threats.  Hook now argues that if

21    Allstate had met and conferred with him about the relief it sought in its application,

22    "the application would not have been necessary."  Dkt. No. 46 at 2.  Hook's own

23    actions again belie his contentions.  Hook did not withdraw from the case, or agree

24    to stay depositions.  To the contrary, he aggressively opposed the application, asked

25    the Court to reinstate the noticed depositions, blamed Allstate for his conduct, and

26    asked the Court to sanction Allstate.  Dkt. No. 26.

27           And this brings us to a related falsehood that Hook makes no less than 5 times

28    in his response:  His repeated contention that he has apologized to Allstate and its

1    counsel.  Dkt. No. 46 at 1, 2, 3, 5.  The Court can scour the numerous filings and

2    hearing transcript in this case and nowhere will it find an apology to Allstate or its

3    counsel.  Indeed, to this day, Hook has *never* apologized to Allstate or its lawyers –

4    whether in writing or verbally – for any of his misconduct, or for causing family

5    members to fear for their safety.  *See* Exhibit 1 (declaration of Peter Klee), ¶ 2.  The

6    fact that Hook has continued to peddle this falsehood is a testament to his lack of

7    actual contrition.

8    **V.      Allstate is entitled to fees and costs through the date of the hearing**

9           Hook now suggests that the Court should not impose sanctions for any fees

10    incurred after the filing of the application.  Dkt. No. 46 at 2.  This too makes no

11    sense.  Hook should pay for Allstate's fees through the date of the hearing, just like

12    the Court ordered, and just like he told the Court he would.  Dkt. No. 44 at 16, 17.

13    **VI.     Allstate's costs and fees are appropriate**

14           Aside from downplaying the severity of his misconduct, blaming Allstate for

15    reacting to his threats, making false claims about apologies that never occurred, and

16    offering a temporally inaccurate picture of what Allstate needed to do and when,

17    Hook also challenges Allstate's billings as "unreasonable."  Dkt. No. 46 at 3.

18           As an initial matter, in light of the gravity of what was at stake, there can be

19    no doubt that Allstate needed to do the work necessary to prevail on its application.

20    As the Court described it, "a whole lot of things would have happened in that

21    conference room" if depositions had proceeded, "but none of it would have been a

22    deposition."  Dkt. No. 44 at 12.  Hook's after the fact attempt to nit-pick Allstate's

23    billing entries should be disregarded for this reason alone.

24           More importantly, Hook's criticisms should be disregarded because they are

25    based on mischaracterizations of the contents of Allstate's billing entries.  For

26    example:

27           1.      Allstate's counsel did not spend "8.6 hours to read settlement

28    demands," as Hook falsely asserts.  In addition to reading the over 100 emails that

-6-

1 Hook sent, the entries Hook appears to be referencing also included (i) time spent

2 researching bases for sanctions and dismissal of the case based on the emails, (ii)

3 evaluating options for dealing with Hook's conduct, and (iii) outlining a motion to

4 respond to the threats. Dkt. No. 40-1 at 1-10, 13.

5        2.       The time spent researching and drafting the application was

6 appropriate. True to form, Hook's suggestion that it was not is based on a

7 misrepresentation about the number of pages in the application. Dkt. No. 46 at 4.

8 And Hook overlooks that his behavior was unprecedented; not something that could

9 be addressed through a form pleading.

10       3.       Hook also misrepresents that Allstate's lawyers spent 10 hours "to

11 review opposition papers." Apart from the fact that10 hours would seem reasonable

12 to review Hook's 463 page filing [Dkt. No. 26], in fact, Allstate spent far less time

13 than that; Hook comes to 10 hours by including time spent *outlining and drafting*

14 *Allstate's reply brief*. Dkt. No. 40-1 at 11. Hook's attempt to characterize this as

15 simply reading his brief is indefensible.

16       4.       Hook suggests – without citing any authority – that 20.1 hours was too

17 much time to draft Allstate's 10-page reply. But a two-hours-per-page ratio is well

18 within what courts have found reasonable, especially in light of Hook's strategy of

19 raising numerous novel privilege and evidentiary objections to defend his

20 threatening emails. *See, e.g.*, *Maldonado v. Houstoun*, 256 F.3d 181, 185-87 (3d

21 Cir. 2001) (finding it reasonable to bill 120 hours for a 41 page brief worked on by

22 multiple lawyers and consisting of one uncomplicated issue, which had already been

23 briefed by parties and discussed at length in a "well-written and thorough opinion"

24 at the district court level).

25       5.       Hook suggests – again without citation to authority – that Allstate's

26 counsel should not have billed for the time needed to travel for the hearing. This

27 argument, too, is contrary to law. *Meola v. JKJ Investments Inc*., 2011 WL

28 1638163, at *3 (C.D. Cal. Apr. 28, 2011) (awarding travel time from San Diego,

-7-

1   where the attorney practiced, for necessary hearings); *Biovail Laboratories Inc., v.*

2   *Anchen Pharmaceuticals, Inc*., 233 F.R.D. 648, 655 (C.D. Cal. 2006) (awarding

3   sanctions including the cost of round-trip airfare and two nights lodging); *Drop Stop*

4   *LLC v. Jian Qing Zhu*, 2018 WL 1407031, at *8 (C.D. Cal. Jan. 22, 2018) ("The

5   argument that two attorneys should not be allowed to attend mediation, hearings, or

6   conference calls is particularly unpersuasive."). Additionally, if Hook did not want

7   to pay for two lawyers to attend the hearing, he should not have made threats to two

8   lawyers. And Hook's emails show that he knew exactly where counsel would be

9   traveling from when he made his threats.

10       6.       Shallow criticisms aside, Hook does not and cannot dispute that every

11  time entry reflects time that Allstate's counsel had to spend as a direct result of his

12  bad acts and the arguments he raised in his opposition brief. Klee Dec., ¶ 3.

13  **VII.   Conclusion**

14       For the foregoing reasons, as well as the support found throughout the record

15  of these proceedings, the Court should order Hook to compensate Allstate for the

16  full $41,748 that it needlessly incurred.

17

18  Dated:  January 17, 2020

19                       SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

20

21

22          By            */s/ Jack Burns*
                          PETER H. KLEE
23                        MARC J. FELDMAN
                          JACK BURNS
24

25                     Attorneys for Defendant
                    ALLSTATE INSURANCE COMPANY
26

27

28